[No. 58570-9. En Banc. February 18, 1993.]

SETH R. DAWSON, *Appellant*, v. LAWRENCE DALY, ET AL, *Respondents*.

*Seth R. Dawson, Prosecuting Attorney,* and *Thomas Herrick Robertson, Deputy,* for appellant.

*Mestel & Muenster,* by *John R. Muenster,* for respondents.

*Pamela G. Bradburn* on behalf of WSCCCE, AFSCME, and AFL-CIO, amici curiae for appellant.

*Norm Maleng, Prosecuting Attorney for King County,* and *Mary F. Perry, Senior Deputy,* on behalf of Washington Association of Prosecuting Attorneys; *Mark H. Sidran, Seattle City Attorney,* and *Elizabeth M. René, Assistant,* on behalf of Washington State Association of Municipal Attorneys, amici curiae for appellant.

*Christine O. Gregoire, Attorney General,* and *Chip Holcomb, Senior Counsel,* amicus curiae for appellant.

BRACHTENBACH, J. — The issue presented by this case is whether the public disclosure act, RCW 42.17, requires the Snohomish County Prosecutor's office (prosecutor's office) to give a citizen (1) copies of documents compiled for use in

cross-examining an "expert" witness (the requesting citizen) who frequently testifies as a defense witness in child sexual abuse cases prosecuted in Snohomish County and (2) a copy of the personnel file of a deputy prosecutor. The trial court ruled that these documents were not within any of the exemptions to the public disclosure act. We reverse.

The request for disclosure was made on behalf of Lawrence Daly, a former law enforcement officer who appears frequently as a defense expert witness in child sex abuse prosecutions in Snohomish County. Employees of the prosecutor's office have developed files on Daly for use in challenging his qualifications, in cross-examining him, and in attempting to impeach him when he appears as a defense witness in child sexual abuse prosecutions.

Paul Stern, a deputy prosecutor, created one of the files. William France, a child protection specialist employed by the prosecutor's office, compiled a second file. These files contain three categories of documents: (1) intraagency memoranda and notes by Stern and France concerning Daly; (2) correspondence with third parties about Daly; and (3) articles, books, testimony, affidavits, and other statements by Daly with notations added by employees of the prosecutor's office. France stated that his file had been developed to assist deputy prosecutors in preparing for two previous prosecutions.

Attorney Clifford Freed, acting on Daly's behalf, made a public disclosure act request for copies of all files concerning Daly and for a copy of Stern's personnel file. The stated purpose of this request was to determine whether Stern or France had defamed Daly or tortiously interfered with Daly's business.

The prosecutor disclosed the contents of Stern's personnel file except for the following: (1) letters written by Stern or on his behalf seeking employment; (2) a copy of Stern's resumé; (3) notes taken during Stern's employment interview; (4) a letter concerning that interview; (5) performance evaluations; and (6) requests for verification of employment. No

part of Stern's file on Daly was disclosed. As to France's file on Daly, only correspondence with one professor and a copy of one newspaper article concerning Daly were disclosed.

In a letter to Daly's attorney, the prosecutor claimed that all other requested documents were exempted from disclosure by specific statutory exemptions and informed him that the prosecutor intended to seek a permanent injunction against disclosure of the documents withheld. Simultaneously, the prosecutor sought an injunction.

The trial court denied the injunction as to all documents except Stern's resumé, the letters relating to Stern's application for employment, and the notes taken during Stern's interview. We granted direct review of the trial court's ruling. The order was stayed pending review.

■ De novo review of the trial court's order is appropriate because the record consists only of affidavits, memoranda of law, and other documentary evidence. *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989).

The public disclosure act (the act), RCW 42.17, was enacted in 1972 by initiative. The act is a "strongly worded mandate for broad disclosure of public records." *Spokane Police Guild*, at 33. To "promote complete disclosure", RCW 42.17.010 requires that the act be construed liberally. The basic duty of disclosure is set out in RCW 42.17.260(1), which provides:

> (1) Each *agency*, in accordance with published rules, shall make available for public inspection and copying all *public records*, unless the record falls within the specific exemptions of . . . RCW 42.17.310 . . . or other statute which exempts or prohibits disclosure of specific information or records.

(Italics ours.) As a threshold matter, this provision indicates that the act will only apply when an "agency" is requested to disclose "public records".

RCW 42.17.020(1) defines "Local agency" to include "every county... or any office, department... or agency thereof...." The Snohomish County prosecutor's office is an agency covered by the act because it is an office of a county.

■ ■ The next question is whether the requested documents are "public records" covered by the act. RCW 42.17-.020(27) defines "public record":

> "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.

The documents in the files compiled on Daly are public records because they are writings relating to the performance of prosecutorial functions, and they are used by the prosecutor's office in carrying out those functions. The evaluations of Stern's performance are also public records because they are prepared by the prosecutor's office, and they contain information relating both to the conduct of government and to the performance of governmental, prosecutorial functions. The requests for verification of Stern's employment, however, are not public records. Verification requests seeking information about an employee's position, salary, and length of service relate neither to the conduct of government, nor to the performance of any governmental function. Verification requests are not within the scope of the act and are not subject to disclosure.

■ ■ Once documents are determined to be within the scope of the act, disclosure is required unless a specific statutory exemption is applicable. RCW 42.17.310(1) lists categories of records that are exempt from disclosure. Because the act favors disclosure, the statutory exemptions must be construed narrowly. *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 793, 791 P.2d 526 (1990). The agency claiming an exemption bears the burden of proving that the documents requested are within the scope of the claimed exemption. *Brouillet*, at 793.

The prosecutor claims that the files on Daly are exempt under RCW 42.17.310(1)(j), the discovery rules exemption. RCW 42.17.310(1)(j) exempts:

> Records which are relevant to a controversy to which an agency is a party but which records would not be available to

another party under the rules of pretrial discovery for causes pending in the superior courts.

This exemption incorporates the work product doctrine as a "rule of pretrial discovery". *See Overlake Fund v. Bellevue*, 60 Wn. App. 787, 795, 810 P.2d 507, *review denied*, 117 Wn.2d 1022 (1991). Neither the act nor our cases give any guidance concerning the proper scope or interpretation of this exemption. The parties and the trial court agreed that the proper application of this exemption depends on the construction of the term "controversy", which is not defined in the statute.

The trial court found that the term "controversy" as used in this context means existing litigation. The prosecutor asks us to instead adopt a dictionary definition, "a prolonged public dispute, debate or contention", as the proper interpretation of controversy. We reject the prosecutor's suggested interpretation because it violates the requirement that the act's exemptions be construed narrowly. *See Brouillet*, at 793. We also reject the trial court's suggested construction. Although the trial court did give the exemption a narrow interpretation, the trial court's interpretation brings RCW 42.17.310(1)(j) into conflict with our court rules establishing the work product rule. The protection of the work product rule is triggered prior to the official initiation of litigation and extends beyond the official termination of litigation. *See Heidebrink v. Moriwaki*, 104 Wn.2d 392, 400, 706 P.2d 212 (1985) (explaining that the work product rule attaches to documents prepared prior to trial when the specific parties involved have expectations that litigation will occur); *Pappas v. Holloway*, 114 Wn.2d 198, 210, 787 P.2d 30 (1990) (holding that the protection of the work product rule continues after litigation has terminated); *Dever v. Fowler*, 63 Wn. App. 35, 47, 816 P.2d 1237, 824 P.2d 1237 (1991) (following *Pappas*), *review denied*, 118 Wn.2d 1028 (1992). Where a court rule and a statute relate to the same subject, they should be "harmonized, and both given effect if possible." *Nearing v. Golden State Foods Corp.*, 114 Wn.2d 817, 821, 792 P.2d 500 (1990).

Our goal in interpreting a statutory provision is to give effect to the intent of the Legislature. *Rozner v. Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). Where the Legislature has not specifically defined a term used in a statute, resort to a dictionary to give meaning to the term is appropriate. *State v. Belgarde*, 119 Wn.2d 711, 716-17, 837 P.2d 599 (1992). Black's Law Dictionary defines "controversy" as "[a] litigated question; adversary proceeding in a court of law; a civil action or suit, either at law or in equity; a justiciable dispute." Black's Law Dictionary 330 (6th ed. 1990).

The statutory context in which a term is used is also relevant in interpreting an undefined term. *State v. Rhodes*, 58 Wn. App. 913, 920, 795 P.2d 724 (1990). In this case, the common law definition is consistent with the context in which the term is used. "Controversy" is used in RCW 42.17.310(1)(j) as a threshold requirement for application of the work product rule to exempt documents from disclosure under the act. The work product rule requires litigation, either anticipated litigation or actual, past or present, litigation. *See Heidebrink*, at 400; *Pappas*, at 210.

By interpreting "controversy" as encompassing either anticipated litigation or actual past or present litigation, we interpret RCW 42.17.310(1)(j) in accord with the clear intent of the statute to protect attorney work product from public disclosure. In this way, moreover, RCW 42.17.310(1)(j) is harmonized with the work product rule in our court rules.

We hold that when documents are both relevant to a controversy, defined as completed, existing, or reasonably anticipated litigation, and protected under the work product rule, the exemption in RCW 42.17.310(1)(j) will apply.

■ Our approach is consistent with the way the United States Supreme Court has interpreted the similar Freedom of Information Act (FOIA), 5 U.S.C. § 552, provision. *See FTC v. Grolier Inc.*, 462 U.S. 19, 28, 76 L. Ed. 2d 387, 103 S. Ct. 2209 (1983) ("attorney work product is exempt . . . without regard to the status of the litigation for which it was prepared"). Cases interpreting FOIA are relevant when we are interpreting our state act. *Hearst Corp. v. Hoppe*, 90

Wn.2d 123, 128, 580 P.2d 246 (1978). However, the trial court's reliance on *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 57 L. Ed. 2d 159, 98 S. Ct. 2311 (1978) for the proposition that documents are no longer protected once litigation terminates is misplaced. *Robbins* was not decided under the FOIA exemption that incorporates the protections present in the federal discovery rules. Instead, *Robbins* concerned the FOIA exemption for investigative records. Moreover, the implication in *Robbins* that protection would terminate with the conclusion of the litigation was based on the effect that the conclusion of the litigation would have on the needs of the law enforcement agency. *Robbins*, at 236-42.

The trial court conducted an in camera review of the documents contained in the prosecutor's files on Daly. As to whether these documents constitute work product, the trial court made the following finding of fact: "Some of the materials in the records reviewed *in camera*, in particular, the notes and observations by Mr. France and Mr. Stern, constituted work product in the case for which they were prepared." Finding of fact 2.9; Clerk's Papers, at 8. We remand for the trial court to apply our holding concerning the proper interpretation of RCW 42.17.310(1)(j) to this finding.

As to any of the documents in the prosecutor's file on Daly that the trial court determines are not work product, we must consider the applicability of the other exemptions claimed by the prosecutor. The two other RCW 42.17.310(1) exemptions claimed by the prosecutor are (d), the intelligence and investigative records exemption, and (i), the deliberative process exemption.

RCW 42.17.310(1)(d) exempts:

> Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies . . . the nondisclosure of which is essential to effective law enforcement . . ..

Records are "specific investigative records" if they were "compiled as a result of a specific investigation focusing

with special intensity upon a particular party." *Laborers Int'l Union, Local 374 v. Aberdeen*, 31 Wn. App. 445, 448, 642 P.2d 418, *review denied*, 97 Wn.2d 1024 (1982). The investigation involved must be "one designed to ferret out criminal activity or to shed light on some other allegation of malfeasance." *Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 31, 671 P.2d 280 (1983).

The prosecutor has not demonstrated that Daly was being investigated for criminal activity or "other malfeasance". Neither has the prosecutor claimed that the records concerning Daly contain any intelligence information. Therefore, on the record, the documents concerning Daly are not of the type protected by RCW 42.17.310(1)(d).

■ The prosecutor also relies upon RCW 42.17.310(1)(i), which exempts: "Preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed or policies formulated or recommended . . .." The protection afforded by this exemption extends only until the policies or recommendations contained in the requested documents have been implemented. *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 800, 791 P.2d 526 (1990).

This exemption is not applicable to the documents concerning Daly because the prosecutor has not carried the burden of showing that any policies discussed in the intra-agency memoranda concerning Daly have not already been implemented. In his declaration, France stated that his materials on Daly were developed in preparation for two previous trials. To the extent his recommendations were implemented in either of those trials, the memoranda would no longer be exempt. The same proof is lacking as to Stern's notes concerning Daly.

■ The prosecutor also argues that an additional exemption from disclosure is created by RCW 42.17.330 which provides:

> The examination of any specific public record may be enjoined if . . . the superior court . . . finds that such examination would clearly not be in the public interest and would

substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions. . . .

We hold that RCW 42.17.330 does create an independent basis upon which a *court* may find that disclosure is not required, if the court, upon a request for an injunction under RCW 42.17.330, finds (1) that disclosure is not in the public interest and (2) that disclosure would cause substantial and irreparable damage to a person or a vital government function. However, the protection provided by RCW 42.17.330 differs from that provided by the exemptions in RCW 42.17-.310(1). An agency believing that requested documents are covered by one or more of the RCW 42.17.310(1) exemptions may, on its own initiative under RCW 42.17.310(4), withhold disclosure until the requesting party initiates a court action to compel disclosure under RCW 42.17.340. In contrast, an agency believing that requested documents are protected from disclosure under RCW 42.17.330 may, on its own initiative, withhold disclosure only so long as is needed for the agency to seek a court determination of the applicability of RCW 42.17.330. In this case, the prosecutor sought the necessary court determination at the exact moment the requesting party was notified of the refusal to disclose the requested documents. Therefore, if on remand the trial court finds, based on its in camera review, that the requirements of RCW 42.17.330 are met as to the documents concerning Daly, the trial court should enter an appropriate injunction.

Finally, the prosecutor relies on RCW 5.60.060(5) to prevent disclosure of statements made by consulting experts concerning Daly. Because this argument was not raised before the trial court, we will not consider it. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 781, 819 P.2d 370 (1991).

We next consider whether the evaluations of Stern's performance are exempt from disclosure under the act. The prosecutor argues that they are exempt from disclosure under RCW 42.17.310(1)(b), the employee privacy exemption. This provision exempts: "Personal information in files

maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." RCW 42.17.310(1)(b). RCW 42.17.255 explains that a person's right to privacy is violated "only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." Under this provision, the use of a test that balances the individual's privacy interest against the interest of the public in disclosure is not permitted. *Brouillet*, 114 Wn.2d at 798.

In *Brouillet*, the court held that disclosure of records concerning teacher certificate revocations would not violate the teachers' privacy rights. *Brouillet*, at 798. That holding was based on the ground that the records were of legitimate concern to the public. Because the agency could not show the essential element of lack of legitimate public concern, the court did not consider whether the disclosure would be highly offensive.

The Court of Appeals has also considered the employee privacy exemption. In a wrongful termination case in which the plaintiff sought "personnel evaluations and records of the performance and discipline of other employees", the court held that the records, with some deletions, should have been disclosed. *Ollie v. Highland Sch. Dist. 203*, 50 Wn. App. 639, 645, 749 P.2d 757, *review denied*, 110 Wn.2d 1040 (1988).

> We hold that under RCW 42.17.310, not all the information contained in personnel evaluations and personnel records of school district employees is privileged; information about public, on-duty job performances should be disclosed. Deletion of the employees' names and identifying details would protect the privacy of the employees.

*Ollie*, at 645.

In another case, the records at issue were internal investigation files of several law enforcement agencies concerning complaints filed against police officers. *Cowles Pub'g Co. v. State Patrol*, 44 Wn. App. 882, 724 P.2d 379 (1986), *rev'd on other grounds*, 109 Wn.2d 712, 748 P.2d 597 (1988). The court held that disclosure would not violate the officers'

privacy. "Although the officers may be embarrassed by the release of their names in conjunction with the information in these files, the disclosure of the details of an officer's misconduct, while in the performance of his public duties, is not highly offensive." *Cowles Pub'g Co.*, at 892-93. The court also held that the records were of legitimate concern to the public. *Cowles Pub'g Co.*, at 893-94.

A third Court of Appeals case involved a request by a newspaper for copies of complaints made by police officers concerning the local chief of police. *Columbian Pub'g Co. v. Vancouver*, 36 Wn. App. 25, 671 P.2d 280 (1983). The Court of Appeals upheld the trial court's finding that the employee privacy exemption "does not apply because the records relate to the job performance of a public official". *Columbian Pub'g Co.*, at 29.

We first examine whether the disclosure of Stern's performance evaluations would be highly offensive to a reasonable person. Speaking generally about the right of privacy, we have stated that the right of privacy applies "only to the intimate details of one's personal and private life", which we contrasted to actions taking place in public that were observed by 40 other people. *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 38, 769 P.2d 283 (1989). The Court of Appeals has explained that the employee privacy definition protects personal information that the employee would not normally share with strangers. *Cowles Pub'g Co.*, at 890-91.

The issue of whether disclosure of a performance evaluation, which does not discuss any specific instances of misconduct or of the performance of public duties, would be highly offensive to a reasonable person has not previously been considered in this jurisdiction. Other courts, however, have considered the issue. "[T]he evaluation of an individual's work performance, even if favorable, is personal information and its release is an invasion of privacy." *Celmins v. United States Dep't of Treasury*, 457 F. Supp. 13, 15 (D.D.C. 1977).

"Employment records would reasonably contain, among less sensitive information, references to family problems, health problems, past and present employers' criticism and observations, military records, scores from IQ tests and performance tests . . . and other matters, many of which most individuals would not willingly disclose publicly. . . ."

*Missoulian v. Board of Regents*, 207 Mont. 513, 524, 675 P.2d 962 (1984) (quoting *Montana Human Rights Div. v. Billings*, 199 Mont. 434, 442, 649 P.2d 1283 (1982)). We agree that employee evaluations contain personal information within the meaning of RCW 42.17.310(1)(b).

The offensiveness of disclosure of this category of personal information has also been considered:

The sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence is sufficiently well known to be an appropriate subject of judicial notice.

(Footnote omitted.) *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 318, 59 L. Ed. 2d 333, 99 S. Ct. 1123 (1979). This sensitivity goes beyond mere embarrassment, which alone is insufficient grounds for nondisclosure under RCW 42.17-.340(3). Employee evaluations qualify as personal information that bears on the competence of the subject employees.

We hold that disclosure of performance evaluations, which do not discuss specific instances of misconduct, is presumed to be highly offensive within the meaning of RCW 42.17.255. This presumption may be overcome in some cases. For example, in *Ollie v. Highline Sch. Dist. 203*, *supra*, the deletion of identifying information from the evaluations of numerous employees was effective to protect the employees' privacy.

The presumption we establish satisfies *only* the offensiveness prong of RCW 42.17.255. For a performance evaluation to be within the employee privacy exemption, the agency must *also* establish the absence of a legitimate public concern. Thus, we must consider whether Stern's performance evaluations are of legitimate concern to the public. This inquiry must be made without regard to the identity of the requesting party or the purpose of the request. RCW 42.17-

.270. No doubt the performance evaluations of county prose-cutors are of some interest to the members of the public who are served by the prosecutors. However, the application of the exemption turns on whether the *concern* of the public is *"legitimate"*.

The term "legitimate" is not defined in the statute. *Webster's Third New International Dictionary* offers the following definitions: (1) "accordant with law", (2) "conforming to recognized principles or accepted rules and standards", or (3) "reasonable". *Webster's Third New International Dictionary* 1291 (1981). Given that "legitimate" is used in the context of the act which recognizes that in promoting disclosure it is necessary to be "mindful . . . of the desirability of the efficient administration of government," RCW 42.17.010(11), "reasonable" is the most appropriate meaning for legitimate.

Although RCW 42.17.255 does not allow a balancing of the employee's privacy interest against the public interest, RCW 42.17.010(11) contemplates some balancing of the public interest in disclosure against the public interest in the "efficient administration of government". Interpreting "legitimate" to mean "reasonable" is consistent with a balancing approach. Requiring disclosure where the public interest in efficient government could be harmed significantly more than the public would be served by disclosure is not reasonable. Therefore, in such a case, the public concern is not legitimate.

Several other states have taken a similar approach to prevent disclosure where the public would be harmed by disclosure even in cases unlike ours where no specific statutory exemption is applicable. *See Stone v. Consolidated Pub'g Co.*, 404 So. 2d 678, 681 (Ala. 1981); *Anchorage v. Anchorage Daily News*, 794 P.2d 584, 590-91 (Alaska 1990); *Village of Butler v. Cohen*, 163 Wis. 2d 819, 825, 472 N.W.2d 579, *review denied*, 475 N.W.2d 584 (1991).

> Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the

business of government carried on efficiently and without undue interference.

*Stone,* at 681. The Alaska court was quick to point out that this balance does not interfere with any preference for disclosure established by its public records act because the burden is still on the agency to show that the public interest weighs on the side of nondisclosure. *Anchorage Daily News,* at 591.

 While we recognize that the public has some degree of interest in disclosure of the evaluations of prosecutors, in light of the potential harm disclosure could cause, we hold that *legitimate* public *concern* is lacking in this case. *Cf. Stern v. FBI,* 737 F.2d 84, 93 (D.C. Cir. 1984) (holding that public interest based only on "a general notion of public servant accountability" does not necessarily require disclosure). Disclosure could harm the public interest in efficient government in two ways. First, if public employees were aware that their performance evaluations were freely available to their co-workers, their neighbors, the press, and anyone else who cares to make a request under the act, employee morale would be seriously undermined. The likely result would be a reduction in the quality of performance by these employees.

> [D]isclosure of even favorable information may well . . . incite jealousy in . . . co-workers. . . .
> . . . Disclosure will be likely to spur unhealthy comparisons among . . . employees and thus breed discord in the workplace.

*Ripskis v. Department of Housing & Urban Dev.,* 746 F.2d 1, 3 (D.C. Cir. 1984). Second, disclosure could cause even greater harm to the public by making supervisors reluctant to give candid evaluations. "Disclosure will be likely to chill candor in the evaluation process". *Ripskis,* at 3. *See also Trenton Times Corp. v. Board of Educ.,* 138 N.J. Super. 357, 363, 351 A.2d 30 (1976) ("[w]ere all personnel evaluations known to be subject to public disclosure, candor in making them might well be compromised."). The quality of public employee performance would, therefore, suffer because the public em-

ployees would not receive the guidance and constructive criticism required for them to improve their performance and increase their efficiency.

These harms outweigh the public interest in disclosure, at least in a case such as this one where our in camera review, conducted at the request of the prosecutor, revealed that Stern's evaluations do not discuss specific instances of misconduct or public job performance. Therefore, the request for disclosure is not reasonable, the public concern is not legitimate, and the trial court is reversed thereon.

The final two matters raised for our consideration are the trial court's award of attorney fees to Daly and his request for attorney fees on appeal. The prosecutor argues that RCW 42.17.340 does not support an award of attorney fees in an injunction action brought under RCW 42.17.330. Because we have reversed the trial court's ruling, Daly is not a party who has prevailed against an agency as required by RCW 42.17.340. Therefore, the trial court's award of attorney fees is reversed, and it is not necessary for us to reach the issue raised by the prosecutor at this time. However, the trial court will have to reach this issue if any of the documents in the prosecutor's files on Daly are found to be nonexempt on remand. If the trial court determines that attorney fees are appropriate, the award should relate only to that which is disclosed and not to any portion of the requested documents found to be exempt on this appeal. Finally, because Daly did not prevail on appeal, he is not entitled to attorney fees under RAP 18.1.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.