# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE CHURCH OF THE DIVINE EARTH, | No. 53804-1-II |
| Appellant, | |
| v. | |
| CITY OF TACOMA, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — The Church of Divine Earth (Church) filed a Public Records Act

(PRA), chapter 42.56 RCW, request with the City of Tacoma (City), seeking job performance

evaluations for two City employees. The City responded, redacting some material and

explaining those redactions in a privilege log. The Church filed this action, alleging that the City

violated the PRA. The City filed a motion for summary judgment dismissal, which the trial court

granted.

On appeal, the Church argues the trial court erred in granting summary judgment

dismissal because the City's redactions did not comply with the PRA's "personal information"

exemption, and the City's explanations in the privilege log were insufficient.

We hold that the City properly redacted information in the performance evaluations and

that the City provided adequate explanations in its privilege log. Thus, we affirm.

## FACTS

Peter Huffman and Kurtis Kingsolver are employed by the City as department directors.

Huffman leads the Department of Planning and Development Services, and Kingsolver leads the

Department of Public Works. These men are two of several department directors for the City. The assistant city manager directly supervised Huffman and Kingsolver in their roles as department directors.

The Church submitted a PRA request to the City, seeking, among other documents, five years of performance evaluations for Huffman and Kingsolver. The City responded, providing the performance evaluations in partially redacted form.[1]

The performance evaluations in question vary slightly depending on the year and the position evaluated. The performance evaluations generally contain four sections: (1) basic employee information, (2) rating the employee's performance based on different categories and stating specific examples of the employee's work, (3) goal setting and analysis of progress on previous goals, and (4) comments, overall rating, and signatures. The performance evaluations begin by stating the City's mission and values and basic employee information including name, division, job title, supervisor conducting the evaluation, and review time period. The City did not redact this information.

The next section involves performance expectations. This section lists different categories for evaluating the employee, such as accountability and resourcefulness in problem solving. In each category, the employee's performance is rated, ranging from "Exceeds Expectations" to "Does Not Meet Expectations." Clerk's Papers (CP) at 3. The performance evaluation contains a column next to each category for "Specific Examples." CP at 3. The City redacted the ratings and specific examples but did not redact the evaluation categories.

---

[1] The record on appeal includes the redacted and unredacted versions of the performance evaluations.

No. 53804-1-II

The third section is the employee's goal development plan which provides spaces to list employee goals, how to achieve those goals, progress on those goals, and the approximate date those goals will be completed. The City redacted the employee's listed goals, steps toward achievement, progress, and dates, but did not redact the section headings. Finally, the performance evaluations provide sections for employee comments, supervisor comments, an overall rating on the employee's performance, and signatures of the employee and supervisor. The City redacted the comments and overall rating, but did not redact the headings or signatures.

The City included a privilege log that identified and gave reasons for the redactions. The privilege log stated:

> **EMPLOYEE PERFORMANCE EVALUATIONS (NO SPECIFIC MISCONDUCT)** - These records, consisting of performance evaluations which do not discuss specific instances of misconduct, are protected from disclosure and have been withheld in their entirety based on the following authority:
>
> **RCW 42.56.230 Personal information**
> (3) Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy.
>
> **RCW 42.56.050 Invasion of privacy, when.**
> A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public. The provisions of this chapter dealing with the right to privacy in certain public records do not create any right of privacy beyond those rights that are specified in this chapter as express exemptions from the public's right to inspect, examine, or copy public records.
>
> -AND-
>
> **Dawson v. Daly, 120 Wn.2d 782, 797**[, 845 P.2d 995] **(1993)**, *overruled in part on other grounds by Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 257-58, 884 P.2d 592 (1994)**.**

3

CP at 298. Following the production of the partially redacted performance evaluations and accompanying privilege log, the City closed the Church's request.

The Church filed a complaint, alleging that the City wrongfully redacted the performance evaluations and that the City's brief explanation in its privilege log was inadequate. The Church moved for *in camera* review of the performance evaluations and for summary judgment regarding its claims.

The City opposed the Church's motion for summary judgment, but not the Church's motion for *in camera* review. Regarding its response to the Church's motion for summary judgment, the City attached the affidavit of Catherine Journey. Journey is the City's Training and Development Manager and oversees the performance evaluation process. She explained that the City's performance evaluation process occurs annually between the employee and their direct supervisor. The review process is the same for department directors. Journey stated, "The purpose of the process is to bring out the best performance in all of our employees so that we can provide excellent service to our community." CP at 376-77. The evaluation process allows employees to raise issues regarding their work or department and provides an opportunity for supervisors to "coach the employee on a wide variety of performance issues." CP at 377. Journey stated that the effectiveness of the performance evaluation process would be "seriously undermined" if the performance evaluations were subject to disclosure. CP at 377.

By letter opinion, the trial court stated that it reviewed the performance evaluations *in camera* and confirmed that no specific instances of misconduct were redacted. It concluded that the redactions made were not of public concern and disclosure would risk detrimental effects. It continued, "There is nothing further that Defendant City of Tacoma must do with respect to the

4

substance of its privilege log, and all redactions reviewed *in camera* were appropriate." CP at 392. Following this, the City moved for summary judgment dismissal of the case. The trial court granted the City's motion.

The Church appeals the trial court order granting the City's motion for summary judgment dismissal. The Church petitioned the Supreme Court for direct review. The Supreme Court denied the Church's petition, and transferred the case to this court.

ANALYSIS

I. PUBLIC RECORDS ACT

The Church argues that the performance evaluations do not meet the requirements for the claimed PRA exemption and that the City violated the PRA by not providing adequate explanations in its privilege log.[2] We disagree.

A.    *Legal Principles*

The PRA is a strongly worded mandate for broad disclosure of public records. *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Its purpose is to increase governmental transparency and accountability by making public records accessible to Washington's citizens. *John Doe A v. Wash. State Patrol*, 185 Wn.2d 363, 371, 374 P.3d 63 (2016). We liberally construe the PRA to promote the public interest. *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007); RCW 42.56.030. When evaluating a PRA claim, we "take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or

_____

[2] The Freedom Foundation filed an amicus curiae brief to the Supreme Court in support of the petition for direct review, raising the same arguments as the parties.

embarrassment to public officials or others." RCW 42.56.550(3). We review agency actions under the PRA de novo. *John Doe A*, 185 Wn.2d at 370-71; RCW 42.56.550(3).

We review a trial court's order granting summary judgment de novo. *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

B.      *Performance Evaluations*

The Church argues that Huffman's and Kingsolver's performance evaluations do not meet the requirements for the claimed PRA exemption. Following our *in camera* review of the performance evaluations, we disagree.

A government agency must disclose public records upon request unless a specific exemption in the PRA applies. RCW 42.56.070(1); *Ameriquest Mortg. Co. v. Office of the Att'y Gen.*, 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013). The agency claiming the exemption bears the burden of proving that the withheld records are within the scope of the exemption. *Resident Action Council*, 177 Wn.2d at 428. We narrowly construe PRA exemptions. RCW 42.56.030.

Performance evaluations are not a specifically enumerated exemption in the PRA. However, RCW 42.56.230(3) may prevent disclosure of performance evaluations as "personal information." This statute exempts "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." RCW 42.56.230(3). A person's right to privacy is violated when disclosure of the information "(1) [w]ould be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050.

"Employee evaluations qualify as personal information that bears on the competence of the subject employees." *Dawson*, 120 Wn.2d at 797. Because performance evaluations contain an employer's criticisms and observations, performance evaluations are not information most individuals willingly disclose to the public. *Dawson*, 120 Wn.2d at 797. As a result, the disclosure of performance evaluations, which do not discuss specific instances of misconduct, is "presumed to be highly offensive." *Dawson*, 120 Wn.2d at 797. This presumption may be overcome where the agency can effectively remove identifying information from the performance evaluations to protect employee privacy. *Dawson*, 120 Wn.2d at 797 (citing *Ollie v. Highland Sch. Dist. 203*, 50 Wn. App. 639, 749 P.2d 757 (1988)).

The presumption that disclosure would be highly offensive applies only to the first consideration of the right to privacy. *Dawson*, 120 Wn.2d at 797. For a performance evaluation to be exempt from disclosure, the governmental agency must also establish the absence of legitimate public concern. *Dawson*, 120 Wn.2d at 797. In this context "legitimate public concern" means reasonable public concern. *Dawson*, 120 Wn.2d at 798. Courts do not conduct a test that balances an individual's privacy interests against the public's interest in disclosure. *Dawson*, 120 Wn.2d at 798. Instead, courts balance the public's interest in disclosure against the public's interest in efficient administration of government. *Dawson*, 120 Wn.2d at 798.

The Church argues the City's redactions do not fall within the claimed exemption because: (1) the material is not personal information, (2) disclosure of the material would not be highly offense to a reasonable person, and (3) the material is of legitimate concern to the public. We disagree on all three points.

7

1.      *Performance Evaluations Are Personal Information*

The Church argues that the City failed to show that the performance evaluations were personal information. The Church notes that the PRA's "right to privacy" exemption applies only to personal information, and then argues that the right to privacy extends only to the intimate details of one's personal life. Br. of Appellant at 14. The Church then argues that "here *nothing* redacted appears by context related to the intimate details of either Directors Huffman [or] Kingsolver's personal life." Br. of Appellant at 15. The Church argues that because the performance evaluations contain comments on Huffman's and Kingsolver's public job performance, the records must be disclosed. The Church is mistaken; performance evaluations are personal information.

The Church relies on a quote from *Dawson* to support its position. In *Dawson*, our Supreme Court made mention that the employee's performance evaluations at issue did not discuss "specific instances of misconduct or public job performance," in support of its holding that the records were not subject to disclosure. 120 Wn.2d at 800. But that quote is part of the court's balancing of the harms of disclosure over the public's interest; the quote does not stand for the proposition that the records were not personal information.

Performance evaluations contain an employer's criticisms and observations, and these comments are not information most individuals willingly disclose to the public. 120 Wn.2d at 797. As a result, *Dawson* explicitly stated, "Employee evaluations qualify as *personal information* that bears on the competence of the subject employees." 120 Wn.2d at 797 (emphasis added). Our Supreme Court has determined that performance evaluations are personal information.

Because performance evaluations are personal information, we next consider whether the disclosure of this personal information would violate Huffman and Kingsolver's right to privacy. As mentioned above, a person's right to privacy is violated when disclosure of the information would be highly offensive to a reasonable person, and is not of legitimate concern to the public. RCW 42.56.050.

2.      *Disclosure of Performance Evaluations Is Highly Offensive*

The Church argues that disclosure of the performance evaluations would not be highly offensive to a reasonable person. We disagree.

*Dawson* created a presumption that the disclosure of performance evaluations would be highly offensive to a reasonable person. 120 Wn.2d at 797. This presumption may be overcome when the agency can effectively remove identifying information from the performance evaluations to protect employee privacy. *Dawson*, 120 Wn.2d at 797 (citing *Ollie*, 50 Wn. App. 639). In *Ollie*, a former school employee sought the performance evaluations as well as personnel and disciplinary records of other employees during discovery for her wrongful discharge suit. *Ollie*, 50 Wn. App. at 640-41. The school argued that the records were exempt from disclosure. *Ollie*, 50 Wn. App. 643. Division Three of this court held that "not all the information contained in personnel evaluations and personnel records of school district employees is privileged; information about public, on-duty job performances should be disclosed. Deletion of the employees' names and identifying details would protect the privacy of the employees." *Ollie*, 50 Wn. App. at 645.

Here, it was impossible to delete the identifying details to sufficiently protect the privacy of the employees. The Church requested the performance evaluations of two specific employees:

9

one from Public Works and the other from Planning and Development Services. One set of evaluations discusses tasks related with Public Works and the other discusses tasks related to Planning and Development. Our review of the unredacted performance evaluations clearly reveals the identity of the employee based on the information in the "specific examples" column or goals section, which details different projects or tasks related to that employee's departmental role. It would have been impossible for the City to effectively remove identifying information from the performance evaluations. Accordingly, we hold that the Church cannot overcome the presumption that disclosure of the performance evaluations is highly offensive to a reasonable person.

The Church relies on *Ollie* which stated that "not all the information contained in personnel evaluations and personnel records of school district employees is privileged; information about public, on-duty job performances should be disclosed. . . . [The school] has the burden to show information contained in the evaluations is intimate personal information." 50 Wn. App. at 645. The Church argues that the City's blanket redactions are contrary to *Ollie* and that information within evaluations regarding on-duty job performance must be disclosed. However, *Ollie* involved an employee file that contained more than just performance evaluations. Moreover, to the extent this statement in *Ollie* applied to performance evaluations, it was abrogated by *Dawson*, which created the presumption that disclosure of performance evaluations would be highly offensive. *Dawson*, 120 Wn.2d at 797. The court in *Dawson*, stated, "We hold that disclosure of performance evaluations, which do not discuss specific instances of misconduct, is presumed to be highly offensive within the meaning of [former]

RCW 42.17.255 [(1987)]."[3]  120 Wn.2d at 797.  The Supreme Court has reaffirmed this.
*Bellevue John Does 1-11 v. Bellevue Sch. Dist. 405*, 164 Wn.2d 199, 223, 189 P.3d 139 (2008)
("In *Dawson*, we assumed a prosecutor had a right to privacy in his or her performance
evaluations.  *See* 120 Wn.2d at 796-99, 845 P.2d 995.  We see no reason to depart from this
precedent.").  We hold that the performance evaluations are highly offensive within the meaning
of RCW 42.56.050 and that this presumption could not be overcome by deleting the employee
identifying information.

      3.      *No Legitimate Public Concern Justifies Disclosure*

The Church argues that legitimate public concerns justify disclosure.  We disagree.

To prevent disclosure of the performance evaluations, the City must establish the absence
of legitimate public concern.  *Dawson*, 120 Wn.2d at 797.  In determining whether an agency has
met its burden, we balance the public's interest in disclosure against the public's interest in
efficient administrative of government.  *Dawson*, 120 Wn.2d at 798.  Our courts have conducted
this public interest balancing test regarding performance evaluations for a county deputy
prosecutor, an elementary school principal, and a city manager.  *Dawson*, 120 Wn.2d 782;
*Brown v. Seattle Pub. Sch.*, 71 Wn. App. 613, 615, 860 P.2d 1059 (1993); *Spokane Research &
Def. Fund v. City of Spokane*, 99 Wn. App. 452, 453, 994 P.2d 267 (2000).

In *Dawson*, a requester sought disclosure of a deputy prosecutor's personnel file, which
contained performance evaluations.  120 Wn.2d at 787.  The Court considered whether
disclosure of the deputy prosecutor's performance evaluations was of legitimate public concern.
*Dawson*, 120 Wn.2d at 797.  Although the Court acknowledged that the performance evaluations

---

[3] RCW 42.17.255 was recodified as RCW 42.56.050.  LAWS OF 2005, ch. 274, §103.

were undoubtedly of "some interest" to the public, the potential harm to efficient government that could result from disclosure weighed against disclosure. *Dawson*, 120 Wn.2d at 798-99.

The Court reasoned that disclosure could harm the public in two ways. *Dawson*, 120 Wn.2d at 799. First, if public employees knew their performance evaluations were freely available to anyone, including coworkers or the press, employee morale would be seriously undermined and employee performance would suffer. *Dawson*, 120 Wn.2d at 799. Second, disclosure of performance evaluations could prevent supervisors from providing candid evaluations. *Dawson*, 120 Wn.2d at 799. As a result, employee performance would suffer because employees are not receiving the guidance or constructive criticism that would be necessary to improve in their position. *Dawson*, 120 Wn.2d at 799. *Dawson* held that these harms to the public interest in efficient government outweighed the public interest in disclosure where the prosecutor's performance evaluations did not contain "specific instances of misconduct or public job performance." 120 Wn.2d at 800.

In *Brown*, Division One of this court considered the disclosure of an elementary school principal's performance evaluations. *Brown*, 71 Wn. App. at 617. That court applied *Dawson*'s presumption against disclosure, and then balanced public interests. *Brown*, 71 Wn. App. at 617-18. Citing the necessity for effective school district evaluation systems and that this system would be undermined by disclosure, that court held, "Legitimate public concern is lacking here for the same reasons found in *Dawson*." *Brown*, 71 Wn. App. at 619.

In *Spokane Research & Defense Fund*, a split panel of Division Three held that the performance evaluations of the Spokane city manager were subject to disclosure. 99 Wn. App. at 457. For an annual evaluation of the city manager, the city council sent 125 questionnaires to

various stakeholders in the community. 99 Wn. App. at 454. The city council hired an outside consulting firm to compile and analyze the questionnaire responses. 99 Wn. App. at 454. This information factored into the city council's decision to retain the city manager. 99 Wn. App. at 454. The Spokane Research & Defense Fund made a PRA request regarding the questionnaires and resulting report, and the city claimed the records were exempt. 99 Wn. App. at 454.

Division Three recognized that "[e]valuations of public employees ordinarily are not subject to public disclosure" because the employee and supervisor reasonably expect evaluations to remain confidential. 99 Wn. App. at 456. However, that court explained the unique position of city manager:

> The Spokane City Manager is the City's chief executive officer, its leader and a public figure. The performance of the City Manager's job is a legitimate subject of public interest and public debate. A person in the position of Spokane City Manager cannot reasonably expect that evaluations of the performance of his or her public duties will not be subject to public disclosure. Additionally, each year the Spokane City Council evaluates the job performance of the City Manager. In part, the purpose of that evaluation is to determine whether the employment of the City Manager should be continued. Because the City Council used this information in making its determination to retain the City Manager, there is a legitimate public interest in the information.
>
> We hold the public has a legitimate interest in disclosure of [the City Manager's] performance evaluation. For that reason, the information is not exempt even if it would otherwise qualify under [former] RCW 42.17.310(1)(b)[4] [(2003)].

99 Wn. App. at 457.

The case here, is most similar to *Brown*. Here, the performance evaluation process was meant to bring out the best performance in all of the City's employees so that the City may better service the public. The evaluation process allowed employees to raise issues regarding their

---

[4] RCW 42.17.310 was recodified as RCW 42.56.210. LAWS OF 2005, ch. 274, §103.

work or department and provided an opportunity for supervisors to candidly guide employees on a wide variety of performance issues. The City stated that the effectiveness of the performance evaluation process would be "seriously undermined" if the performance evaluations were subject to disclosure. CP at 377.

In balancing the public's interest in disclosure against the public's interest in efficient administrative of government, we hold that no legitimate public concern justifies disclosure. Preventing disclosure of Huffman's and Kingsolver's performance evaluations protects the vital functions of effective government. Unlike a city manager, Huffman and Kingsolver are two of several department directors for the City. Department directors are neither the City's leader nor public figureheads. Huffman's and Kingsolver's performance evaluations were individual conversations with a supervisor; the public was not involved at any stage of the performance evaluation process. Although department directors assume leadership and decision-making roles, their position is more analogous to a school principal.

The performance evaluations were personal information, the release of which would be highly offensive to a reasonable person, and were not of legitimate concern to the public. Accordingly, our *in camera* review shows that the City was not required to disclose unredacted performance evaluations.

C.      *Brief Explanations*

As an initial matter, the Church argues that, because the Church challenged the City's previous brief explanations in a different case and prevailed, the City is collaterally estopped from arguing that its brief explanations in this case comply with the PRA. We disagree.

14

The party asserting collateral estoppel must show, among other elements, that the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004). Regarding brief explanations, the amount of detail necessary to determine whether an exemption is properly invoked depends on the nature of the exemption and the document or information withheld. *City of Lakewood v. Koenig*, 182 Wn.2d 87, 95, 343 P.3d 335 (2014). Here, the previous proceeding referenced by the Church addressed a different records request where the City withheld documents based on attorney-client privilege. The issue of a brief explanation for a previous request regarding the attorney-client privilege exemption presents a different issue than the current request for performance evaluations. Collateral estoppel does not apply.

The Church argues that the City violated the PRA by not providing adequate explanations in its privilege log. We disagree.

When an agency refuses to produce a record or part of a record, the agency must include a statement of the specific exemption and a brief explanation of how that exemption applies to the withheld record. RCW 42.56.210(3). The amount of detail necessary to determine whether an exemption is properly invoked depends on the nature of the exemption and the document or information withheld. *Koenig*, 182 Wn.2d at 95. Where a statute provides for a categorical exemption, citing the statute for that specific exemption may be a sufficient explanation. *Koenig*, 182 Wn.2d at 95. However, where no categorical exemption exists, an additional explanation is required to adequately inform the requester. *Koenig*, 182 Wn.2d at 95.

The purpose of the brief explanation is to inform the requester why the records are being withheld and provide for meaningful judicial review of the agency's withholding. *Koenig*, 182

Wn.2d at 94. As a result, the agency must provide sufficient explanatory information for a requester to determine whether the exemptions are properly invoked. *Koenig*, 182 Wn.2d at 95; WAC 44-14-04004(5)(b). Merely specifying the claimed exemption and identifying the withheld document's author, recipient, date of creation, and broad subject matter is insufficient. *See Sanders v. State*, 169 Wn.2d 827, 846, 240 P.3d 120 (2010). The agency should identify with particularity the specific information being withheld and the specific exemption that supports the withholding. *Koenig*, 182 Wn.2d at 94.

Here, performance evaluations are not a specifically enumerated exemption in the PRA, thus, the City was required to provide additional information to explain the redactions. The City's explanation cited the personal information of the employees statute, the right to privacy statute, and a pinpoint citation to *Dawson*, where the Court explained why the performance evaluations are typically exempt. We hold that the City's brief explanation adequately provided the Church with sufficient explanatory information for the Church to determine whether the exemption was properly invoked. The citation to *Dawson* noted the page where the case specifically addresses performance evaluations, and the statutes provide the foundation of the cited *Dawson* analysis. We hold that the City did not violate the PRA's brief explanation requirement.

ATTORNEY FEES

Both parties request attorney fees. The Church requests its attorney fees based on RCW 42.56.550(4), which provides for an award of costs and attorney fees when a party prevails in a PRA action against an agency. Because the Church does not prevail in this action, we deny the Church's request.

No. 53804-1-II

The City summarily requests costs and attorney fees in the last sentence of its conclusion, citing only RAP 18.1. RAP 18.1(a) allows a party on appeal to recover costs or attorney fees if applicable law so grants. Additionally, RAP 18.1(b) requires a party to devote a section of its opening brief to its request for fees or costs. Here, the City fails to cite any applicable law granting it the right to recover its costs and attorney fees. Further, the City fails to devote a section of its briefing to its request. We also deny the City's request for costs and attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
Lee, C.J.

_____
Melnick, J.

17