[No. 26010–3–I.   Division One.   April 8, 1991.]

THE OVERLAKE FUND, ET AL, *Appellants,* v. THE CITY OF BELLEVUE, *Respondent.*

*Stephen O. Kenyon,* for appellants.

*Richard L. Andrews, City Attorney,* and *David E. Kahn, Assistant,* for respondent.

PEKELIS, J.—The Overlake Fund and Fluke Capital Management appeal the trial court's decision that the City of Bellevue had shown cause why it should not produce all documents relating to Overlake's hotel development proposal. Overlake asserts that the public disclosure act appears to require disclosure of the information and thus, the trial court abused its discretion in refusing to conduct an in camera review of the requested documents. Overlake also contends that if it prevails, it is entitled to costs, attorney fees, and a statutory allowance.

I

The Overlake Fund and Fluke Capital Management (Overlake) owns property in the City of Bellevue (the City) at approximately S.E. 6th Street and 114th Avenue S.E. Substantial portions of Overlake's property are classified as "wetlands." These portions are environmentally sensitive under the Sensitive Area Overlay District regulations, Bellevue City Code (Land Use Code) ch. 20.25H (commonly referred to as the Natural Determinants Ordinance).[1]

In June 1987, Overlake gave Mathew Terry, the director of the Bellevue Design and Development Department (the DDD), a proposal for construction of a 240-room hotel.

---

[1] The City adopted the Natural Determinants Ordinance in May 1987. In January 1987, Overlake had sent a letter to the Bellevue Planning Commission urging it to exclude Overlake's property from the City's proposed Natural Determinants legislation. Overlake asserted that the legislation rendered its property "worthless." The Natural Determinants Ordinance did not exclude Overlake's property.

Under the Natural Determinants Ordinance, the project required a variance from the Bellevue Board of Adjustment (the Board) and a conditional use permit from the Bellevue City Council (the City Council). The DDD prepares recommendations for the Board and the City Council. The City Council then makes the final decision on a variance or conditional use permit.

In response to concerns raised by the City about the height of the proposed hotel, in October 1987, Overlake submitted three alternative revised proposals. Overlake also submitted several documents which contained various experts' conclusions that the height of the hotel was the minimum which was economically feasible.[2] On August 23, 1988, Overlake wrote a letter to Terry summarizing its efforts to address the City's concerns about Overlake's proposed development. The letter also stated:

It is extremely important for you to understand that any reduction in the size or room capacity of this project beyond the Scheme D concessions will simply result in the project losing all economic viability. As we have discussed, we believe that such further reductions would constitute an unconstitutional taking of this property. We also believe such a requirement would render further pursuit of a permit unnecessary in order to establish that the City's actions and policies are in violation of both federal and state law.

In his affidavit, Andrews contends that at this point he thought that if Overlake was not satisfied with the City's decision, Overlake intended to pursue court action asserting an unconstitutional deprivation of its property rights. Therefore, Andrews

determined as the attorney for the City that it was necessary for me to secure the advice of an expert appraiser for an opinion concerning the value of the property in order to advise my clients whether the city was at legal risk with regard to its actions or potential actions concerning the Overlake Fund property. It was for this purpose that the study was requested by me. The report was completed for me and at my direction

---

[2]In his affidavit, Richard L. Andrews, Bellevue city attorney, states that by this time it was clear to him that Overlake "was prepared to assert that city regulations had resulted in an unconstitutional taking of its property."

and has been used as a basis for providing legal advice to my client in this matter. I have reviewed the report with Mathew Terry, in his capacity as Director of Design and Development for the City and advised him concerning his legal position based upon it. It has not otherwise been disclosed outside of the City Attorney's office. It has at all times been treated by Mr. Terry and me as a confidential document, privileged under the attorney–client and work–product principles.

In September 1989, Terry verbally advised Overlake that the DDD intended to recommend denial of Overlake's project because its proposed hotel height did not qualify for a variance. According to Overlake, Terry stated that he based his conclusion, in part, on a study which evaluated Overlake's property and other property in the Seattle/Bellevue area as well as elsewhere in the country upon which hotels had been or could be built. Terry also informed Overlake that the City had undertaken the analysis to determine whether the requested variance represented the "minimum necessary to afford relief" under the City regulations. Subsequently, Overlake made several informal inquiries to the DDD requesting the documents upon which the DDD based its recommendation that Overlake's proposal be denied. On January 9, 1990, pursuant to the public disclosure act, RCW 42.17, Overlake requested

[a]ll documents which you or any member of your staff or any city employee prepared, caused to be prepared or reviewed, which relate in any way to any appraisal or economic or market analysis of the [Overlake] project or property, or to any other project, property, use or activity, which analysis was prepared, reviewed or discussed in connection with the [Overlake] project or property.

On January 23, 1990, the City wrote to Overlake denying the request. Relying on the public disclosure act's "preliminary recommendation" and "pre–trial discovery" exemptions, the City stated:

The City of Bellevue asserts the exemptions in RCW 42.17-.310(1)(i) and (j) for all documents related to the Fluke property, and has no documents which are not exempt from public

disclosure. The basis for the privilege under (1)(j) is the attorney work–product privilege as ·set forth in *Heidebrink v. Moriwaki*, 104 Wn.2d 392, 706 P.2d 212 (1985) and the attorney–client privilege based on RCW 5.60.050(2).[3]

On February 15, 1990, Overlake filed a petition for an order to show cause requiring Bellevue to demonstrate why it should not produce the requested documents. Terry and Andrews submitted affidavits to the trial court in support of their contention that the documents fell within the public disclosure act's preliminary recommendation and pretrial discovery exemptions.

On March 23, 1990, the trial court held a hearing. The trial court heard oral argument and reviewed the pleadings, memoranda, and affidavits submitted by the parties. Overlake asserted that neither asserted exemption applied and asked the trial court to conduct an in camera review of the requested documents. Overlake argued that the City had dramatically changed its characterization of the requested documents, therefore the court could not take the City's word for what the documents contained and could not decide whether they were exempt without examining them.

The trial court declined to conduct an in camera review of the requested documents and concluded that the City had shown cause why the requested information was exempt from public disclosure.

Overlake appeals.

## II

The Washington public disclosure act requires that all public records be available for inspection and copying. RCW 42.17.270. If an agency refuses to provide a public record, in whole or part, it "shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.17.310(4).

---

[3]The City's cite to RCW 5.60.050(2), a section relating to competency of witnesses, is apparently an error.

Upon motion of any person denied access to a public record, the superior court may require the agency to show cause why it refused to disclose the public record. RCW 42.17.340(1). The burden of proof is on the agency to show that the requested record falls within an exemption. RCW 42.17.340(1). If necessary, the superior court may also examine any record in camera in any proceeding brought under the act. RCW 42.17.340(2).

■■ "The Washington public disclosure act is a strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The act's declarations of policy indicate that its provisions are to be "liberally construed" and that its exceptions must be "narrowly confined."[4] *Hearst Corp.,* 90 Wn.2d at 128; *Brouillet v. Cowles Pub'g Co.,* 114 Wn.2d 788, 793, 791 P.2d 526 (1990). We review de novo the question whether the deliberative process and pretrial discovery exemptions justify the City's refusal to disclose the requested documents to Overlake. *See Brouillet,* 114 Wn.2d at 793; *Hearst Corp.,* 90 Wn.2d at 131.

A

We first address the City's contention that the documents are exempt under the deliberative process exemption because they are a preliminary recommendation and include opinions. The deliberative process exemption, RCW 42.17.310(1)(i), exempts from disclosure: "Preliminary drafts, notes, recommendations, and intra–agency memorandums in which opinions are expressed or policies formulated or recommended *except* that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action." (Italics ours.)

---

[4]Because the state act closely parallels the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552, Washington courts often rely on judicial interpretations of FOIA in construing the state act. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 128, 580 P.2d 246 (1978).

■ Overlake asserts that the deliberative process exemption does not apply because Terry cited the documents to Overlake to support his decision to recommend denial of its requested height variance. The City does not deny that Terry cited the documents to Overlake. Rather, in its brief the City argues that the DDD is not an agency, thus, Terry's conduct does not amount to "an agency" publicly citing the documents. This argument is meritless. RCW 42.17.020(1) defines a "local agency" as including: "every county, city, town . . . or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency." Therefore, the DDD is an agency for purposes of the public disclosure act.

■ At oral argument, the City raised the additional argument that even if the DDD is an agency, its conduct did not constitute "agency action." We disagree. Terry is the director of the DDD. Clearly, his decision to recommend denial of Overlake's requested variance is properly characterized as "agency action."

Thus, we conclude that because "an agency" cited the documents publicly, in connection with "agency action," the deliberative process exemption should not apply.[5]

## B

We next address the City's contention that the pretrial discovery exemption applies because a controversy exists and the records are protected by the work product doctrine and attorney–client privilege. The pretrial discovery exemption, RCW 42.17.310(1)(j), exempts from disclosure: "Records which are relevant to a controversy to which an

---

[5]Moreover, the deliberative process exemption is designed to protect only documents which are part of "'a *deliberative or policy–making* process'", not documents which are part of policy implementation. *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 799, 791 P.2d 526 (1990) (quoting *Hearst Corp.*, 90 Wn.2d at 133). The exemption applies only to factual opinions—the exemption does not apply to factual data. *Brouillet*, 114 Wn.2d at 800; *Hearst Corp.*, 90 Wn.2d at 133. Here, the requested documents do not appear to be part of the City's policymaking process, and they contain a certain amount of factual data. Thus, even if Terry had not publicly cited the documents, it appears the exemption would not apply.

agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts."

The City maintains that the January 27, 1987, and August 23, 1988, letters from Overlake to the City indicate that a controversy exists concerning the development of Overlake's property. Overlake asserts that there is no controversy. However, Overlake does not contend that the exemption requires that a lawsuit actually be filed.

The DDD recommended denial of Overlake's proposal after Overlake had warned the City in its letters that a denial would constitute an unconstitutional taking. Therefore, it could be said that a "controversy" exists for purposes of RCW 42.17.310(1)(j). Nevertheless, we are not satisfied that the requested documents would "not be available . . . under the rules of pretrial discovery." The only "rules of pretrial discovery" which could plausibly apply are the work product doctrine or the attorney–client privilege.

■ CR 26(b)(3), which establishes the work product doctrine, provides, in part:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, . . .) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery . . . the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The City relies on *Heidebrink v. Moriwaki,* 104 Wn.2d 392, 706 P.2d 212 (1985) to support its assertion that the work product doctrine protects the requested documents. However, courts do not apply the doctrine in the abstract. "[U]nder *Heidebrink,* Washington courts are required to evaluate the specific parties and their expectations in order to determine whether the materials sought were prepared

in anticipation of litigation." *Escalante v. Sentry Ins. Co.,* 49 Wn. App. 375, 396, 743 P.2d 832 (1987), *review denied,* 109 Wn.2d 1025 (1988).

■ The City also contends that the attorney–client privilege protects the requested documents. This rule, codified at RCW 5.60.060(2), provides: "An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." The attorney–client privilege "protects confidential attorney client communications from discovery or public disclosure so that clients will not hesitate to speak freely and fully inform their attorneys of all relevant facts." *Escalante,* 49 Wn. App. at 393. It is not an absolute privilege, however, and it must be strictly limited to its purpose. *Pappas v. Holloway,* 114 Wn.2d 198, 204, 787 P.2d 30 (1990).

Overlake contends that Terry represented that the City had ordered an evaluation to find out whether Overlake's proposed hotel height was the minimum possible and to help it determine whether Overlake was entitled to a height variance. If we accept Overlake's characterization of the documents, it appears that neither the work product doctrine nor the attorney–client privilege applies because an "appraisal" or "study" of Overlake's property and other similar properties would be available in pretrial discovery. The City maintains, however, that Andrews requested the evaluation in order to advise the City whether it was at legal risk for its actions concerning Overlake's proposed development. If the City's characterization is accepted, the evaluation may incorporate communications protected under the attorney–client privilege or work product.

■ Thus, while it appears neither claimed exemption would justify denying access to the documents in toto, before we can definitively rule that production of the requested materials is required, the trial court must conduct an in camera review of the document. Normally, determining whether in camera inspection is required is left

to the discretion of the trial court. *Donovan v. FBI,* 806 F.2d 55, 59 (2d Cir. 1986). In deciding whether in camera review is necessary to determine whether an agency's asserted Freedom of Information Act exemptions apply, courts consider the following factors: (1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) bad faith on the part of the agency, (4) disputes concerning the contents of the documents, (5) whether the agency requests an in camera inspection, and (6) the strong public interest in disclosure. *Allen v. CIA,* 636 F.2d 1287, 1298–99 (D.C. Cir. 1980), *overruled on other grounds in Founding Church of Scientology v. Smith,* 721 F.2d 828 (D.C. Cir. 1983). These factors, taken together, make in camera review necessary when the court cannot evaluate the asserted exemption without more information than that contained in the government's affidavits. *Arieff v. U.S. Dep't of the Navy,* 712 F.2d 1462 (D.C. Cir. 1983).

Here, faced with two characterizations of the requested documents, judicial economy and the public interest in disclosure would clearly have been better served if the trial court had reviewed the documents and excised any privileged portions. *See Allen,* 636 F.2d at 1298–99.

In conclusion, it appears that the trial court erred in ruling that either exception advanced by the City was applicable to protect the documents from disclosure. However, because of the conflicting characterization of the documents, we direct the trial court to conduct an in camera review in order to determine whether the requested documents contain any information protected by work product or attorney–client privilege as analyzed herein. If the documents contain privileged information, the trial court should excise those portions and give the remaining portions of the study and/or appraisals to Overlake.

### III

Finally, Overlake contends that if it prevails it is entitled to costs, attorney fees, and an amount not to exceed $25

per day for each day that it was denied the right to inspect the document.

■ RCW 42.17.340(3) provides:

Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed twenty–five dollars for each day that he was denied the right to inspect or copy said public record.

In general, "[t]he prevailing party is the one who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Tacoma News, Inc. v. Tacoma– Pierce Cy. Health Dep't*, 55 Wn. App. 515, 525, 778 P.2d 1066 (1989), *review denied*, 113 Wn.2d 1037 (1990).

We instruct the trial court, on remand, to determine, after the in camera review, whether Overlake has essentially prevailed. If so, we instruct the trial court to award Overlake its costs and reasonable attorney fees at trial and on appeal. The trial court should also determine, in its discretion, whether Overlake should receive a statutory award, and if so, the amount.

Reversed and remanded.

SCHOLFIELD and COLEMAN, JJ., concur.

Reconsideration denied May 29, 1991.