Madison HOBLEY, Plaintiff–Appellee,

v.

Jon BURGE, Robert Dwyer, City of Chicago, et al., Defendants.

Appeal of: Jones Day.

No. 05–1367.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 2005.

Decided Jan. 9, 2006.

Jon Loevy (argued), Kurt Feuer, Loevy & Loevy, Chicago, IL, for Plaintiff–Appellee.

James G. Sotos, Hervas, Sotos, Condon & Bersani, Itasca, IL, Mara S. Georges, Office of the Corporation Counsel, Appeals Division, Chicago, IL, for Defendants.

Paul W. Schroeder (argued), Jones Day, Chicago, IL, for Jones Day.

Before COFFEY, EVANS, and WILLIAMS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This appeal stems from a suit by Madison Hobley against the City of Chicago, former Chicago Police Lt. Jon Burge, and other individual defendants. Hobley served 16 years on death row before he was pardoned in 2003. In his § 1983 suit he alleges that Burge and several subordinates tortured and framed him for an arson crime he did not commit. Burge was fired from the police force in 1993 for allegedly torturing a confession from a murder suspect. The question we decide in this interlocutory appeal is whether Hobley may gain discovery of certain documents created and maintained by the law firm Jones Day when it represented the City in the police board proceedings that led to Burge's dismissal.

The seeds for this dispute were sown several months before Hobley filed his suit. In December 2002, a lawyer in the City Corporation Counsel's office notified Jones Day attorney June Ghezzi that a special prosecutor was investigating allegations of torture by Chicago police officers and that a grand jury had subpoenaed documents from the police board proceedings against Burge. Jones Day identified 57 boxes of documents and sent all but 5 of them to Hinshaw & Culbertson, the firm representing the City at that time. Ghezzi informed a Hinshaw attorney that Jones Day was retaining five boxes of documents it considered privileged under the attorney work-product doctrine.

An attorney asserting privilege must timely support that claim with a "privilege log" which describes the nature of each document being withheld. Ghezzi told the

Hinshaw attorney to let her know when a privilege log was needed and to inform her before any of the 52 boxes of nonprivileged materials were produced to anyone. She would hear nothing further for more than a year. The five boxes of claimed work-product documents at the center of this dispute have never left Jones Day's custody.

Hobley filed this suit, alleging a deprivation of his constitutional rights under 42 U.S.C. § 1983, in May of 2003. Once it got going, the record indicates a history of discovery blunders and resistance on the City's side, prompting several court orders, periodic tongue-lashings from the magistrate judge,[1] and at least one set of sanctions against a Hinshaw attorney. In December 2003, the City waived any claims to either attorney-client or work-product privilege. In January 2004, the City produced to Hobley the 52 boxes of police board documents that originally had been assembled for the grand jury investigation. Although the City's attorneys knew Jones Day was still holding five boxes under a claim of privilege, they made no mention of these to Hobley's attorneys, who understandably assumed they were getting *all* of the "police board documents" they requested, not just some of them.[2] Up to this point, no one from the City had told Jones Day about Hobley's lawsuit.

On February 23, 2004, a Hinshaw attorney, Steven Puiszis, called Jones Day's Ghezzi and asked her to prepare a privilege log for the five boxes of documents the firm set aside more than a year earlier. Puiszis later testified that he needed the log to help clear up a different discovery headache—the City's inadvertent production to Hobley of privileged documents unrelated to the police board material—and that he gave Ghezzi no warning that Jones Day's work product was about to take center stage in the vexed saga of this litigation. Representatives from Hinshaw and Jones Day exchanged several other communications during the next several weeks. It remains a point of vigorous dispute whether Jones Day learned enough information during this time to figure out that the withheld police board documents were in play and that it was in danger of losing its privilege claim if it didn't bring the work-product materials to Hobley's attention. Hobley argues that Jones Day knew or should have known about his suit by late February or early March 2004. Jones Day insists it had no knowledge of the specifics of Hobley's litigation or that the documents it was holding might have been implicated in discovery requests and court orders that had been going on for months.

Meanwhile, in the course of briefing yet a different discovery wrinkle, the City disclosed for the first time on March 11, 2004, that its former counsel was holding some police board documents under a claim of privilege. In an order on April 20, 2004, the magistrate judge said the City should have realized those five boxes were encompassed by earlier discovery requests and ordered that they be produced pronto.

This order got Jones Day's attention. Its attorneys filed appearances and a privilege log and asked the judge to reconsider her order. Instead, the judge held an

---

**1.** The case bounced back and forth between Magistrate Judge Geraldine Brown and District Judge Marvin E. Aspen. We have, for the sake of simplicity, bypassed some of the to and fro.

**2.** The City has said it believed the five omitted boxes of work product were covered by a stay then in effect on *"Monell"* discovery—that is, discovery going to city policy—and that the City thus was not required to tell Hobley about them at the time the 52 boxes of documents were produced. The judge rejected this argument.

evidentiary hearing focused on what Jones Day had learned about the Hobley litigation during the preceding months and whether it had moved properly to protect its privilege claim. Dismissing as "not credible" the firm's assertion that it was unaware of the Hobley proceedings until it received a copy of the April 20, 2004, order, and clearly exasperated by all the discovery folderol on the City's side, the magistrate judge found, on Jones Day's request for reconsideration, that the firm had withheld the documents without a proper notice of privilege. *Hobley v. Burge,* 226 F.R.D. 312, 322 (N.D.Ill.2005). She imposed a sanction of waiver and ordered that the five boxes be produced to Hobley's attorneys. *Id.* at 323. The district court, finding that the order was not clearly erroneous, affirmed.

We review discovery sanctions for abuse of discretion. *Maynard v. Nygren,* 332 F.3d 462, 467 (7th Cir.2003). A district court by definition abuses its discretion when it makes an error of law, and while factual findings are usually reviewed for clear error, findings which are bound up with the application of an inapposite legal standard are subject to closer review. *Id.*

■■■ The purpose of the qualified privilege for attorney work product, which is codified in Federal Rule of Civil Procedure 26(b)(3), is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary. *In re Special Sept. 1978 Grand Jury II,* 640 F.2d 49, 62 (7th Cir.1980); *see also Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It also prevents a litigant from "taking a free ride on the research and thinking of his opponent's lawyer." *United States v. Frederick,* 182 F.3d 496, 500 (7th Cir.1999). A majority of courts have held (and Hobley does not dispute) that the privilege endures after termination of the proceedings

for which the documents were created, especially if the old and new matters are related. *See In re Grand Jury Proceedings,* 43 F.3d 966, 971 (5th Cir.1994); *In re Murphy,* 560 F.2d 326, 333–34 and 334 n. 13 (8th Cir.1977).

■■■ It is well-established that the work-product privilege may be invoked by either the client or the attorney. *In re Special Sept. 1978 Grand Jury II,* 640 F.2d at 62; *In re Sealed Case,* 29 F.3d 715, 718 (D.C.Cir.1994). An attorney has an independent interest in privacy, even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interests. *Restatement (Third) of the Law Governing Lawyers* § 90 cmt. c (2000). Although the City has abandoned its own privilege claims, Jones Day's claim is not inconsistent with the City's interests in this litigation.

To begin with the obvious, Jones Day is not a party to Hobley's suit, nor is it representing the City. When documents are sought from a nonparty, the usual method of compelling production is via a subpoena under Fed.R.Civ.P. 45. *See* Fed.R.Civ.P. 34(c); 9A Charles A. Wright, et al., *Federal Practice and Procedure* § 2456 ("The subpoena duces tecum is the only way to compel a nonparty to produce documents or other materials.") This includes work product held by a nonparty attorney. *See Hickman,* 329 U.S. at 504, 67 S.Ct. 385; Fed.R.Civ.P. 45(d)(2). Thus, after the City revealed that five boxes of documents were still in the hands of its former counsel, one might have expected Hobley's attorneys to serve Jones Day with a Rule 45 subpoena.

Under that scenario, though, Hobley likely would have had to litigate document-by-document. The work-product privilege may be overcome "only upon a showing that the party seeking discovery has substantial need of the materials in the prepa-

ration of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). And so instead, Hobley's attorneys evidently decided to go after the whole cache in one swoop by arguing that Jones Day had slept on its rights.

■ The magistrate judge based her sanction order on Fed.R.Civ.P. 34, which governs requests for documents "in the possession, custody or control" of one's opponent. Fed.R.Civ.P. 34(a). Yet, by its terms, Rule 34 applies only to parties. It is the City, not Jones Day, that is the responsive party in this suit. And even if Jones Day were the City's current counsel, Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney. *Hickman*, 329 U.S. at 504, 67 S.Ct. 385 (explaining that Rule 34 "is limited to parties to the proceeding, thereby excluding their counsel or agents"); 8 Wright, et al., *Federal Practice and Procedure* § 2208 (Rule 34 cre-ates a discovery device only against parties and does not run against a party's counsel or nonparty witnesses).

■ The judge reasoned that the five boxes held by Jones Day were encompassed by requests Hobley had served on the City months before the omitted documents came to light. Although the firm had possession and custody of the work product, the judge believed that, as the former client, the City had "control" for purposes of Rule 34. 226 F.R.D. at 320–21.

· The problem, though, is that the City never sought to exercise control over the documents by asking Jones Day to part with or make them available to Hobley.[3] Moreover, since it was not representing the City in this litigation, Jones Day was not looped into requests or orders that encompassed documents it was holding. We don't see how Jones Day can be accused of behaving dilatorily toward discovery requests it never received.

---

**3.** Because Jones Day has an independent interest in privacy, we believe its privilege claim would have negated the City's "control" of the documents for purposes of this litigation. Jones Day, however, makes a more ambitious argument: that the five boxes of work product are the firm's *exclusive* property and that the City, as the former client, would have no entitlement to them for any purpose. Since there is no dispute in this matter between Jones Day and the City, we need not decide the scope of a law firm's work-product rights against a current or former client.

Jones Day finds support for its position from an opinion of the Illinois State Bar Association, *see* ISBA Adv. Op. No. 94–13 (1995) (documents "clearly intended only for internal use" within a law firm may always be withheld from a client), and a few lower court decisions, *see, e.g., Fed. Land Bank of Jackson v. Fed. Intermediate Credit Bank*, 127 F.R.D. 473, 480 (S.D.Miss.1989) (notes, research, and other materials developed by attorney for use in providing services to the client are the attorney's property). However, other courts and authorities have upheld strong client rights toward most documents in an attorney's possession. *See, e.g., Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn*, 91 N.Y.2d 30, 37, 666 N.Y.S.2d 985, 689 N.E.2d 879 (1997) ("[The] obligation of forthrightness of an attorney toward a client is not furthered by the attorney's ability to cull from the client's file documents generated through fully compensated representation, which the attorney unilaterally decides the client has no right to see."); *Clark v. Milam*, 847 F.Supp. 424, 427 (S.D.W.Va.1994) (attorney may not invoke work-product immunity against his own client); *Restatement (Third) of the Law Governing Lawyers* § 46(2) (2000) ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse.").

For present purposes, we simply underscore the established principle that a lawyer may independently seek to keep privileged documents out of litigation when doing so does not conflict with the client's interests. *See id.* § 90 cmt. c.

■ Leaving aside the City's head-in-the-sand posture, Hobley argues that Jones Day was obligated to come forward with its documents once it became "subjectively aware" of his lawsuit. The magistrate judge fixed that date at "no later than February 23, 2004," when Hinshaw attorney Puiszis asked Jones Day's Ghezzi to start preparing a privilege log. 226 F.R.D. at 321.

We fail to see, though, how that conversation could be equated with an event like a discovery request or subpoena, which would have signaled to Jones Day that its documents were now implicated in civil litigation and the clock was running on its privilege claim. Although Hobley was raining down motions to compel on the City, the record shows that Puiszis did not explain to Ghezzi how his need for the privilege log related to any role the work-product material had in the Hobley litigation (Ghezzi may reasonably have assumed it was needed for the special prosecutor's investigation) and that Puiszis provided no deadline.[4] Nor did he inform her that the City had already turned over the nonprivileged police board documents.

Similarly, we cannot endorse the judge's view that Jones Day was subject to a sort of inquiry notice and should have learned about Hobley's suit from the court docket or local legal periodicals. She faulted Jones Day for taking "no action to learn of any deadlines or orders in this case, nor to learn the status of any motions relating to the police board documents." 226 F.R.D. at 321–22. But as Jones Day was a non-party and was not representing anyone, we are at a loss to understand why it should have been expected to monitor the proceedings.

The issue is not "What did Jones Day know and when did they know it?" Regardless of whether the firm was "subjectively aware" of Hobley's suit, there is no authority for the proposition that a nonparty has an affirmative duty to learn about and inject itself into litigation simply because it possesses information one of the parties might find useful. Withholding documents without a proper notice of privilege is, to be sure, a violation of the Federal Rules—if the culprit is a party, see Fed. R. Civ P. 26(b)(5) and Advisory Committee Note to 1993 Amendments, or a nonparty who has received a subpoena, see Fed. R.Civ.P. 45(d)(2) and Advisory Committee Note to 1991 Amendments. While we might understand an argument for sanctions against an attorney who has stonewalled, withheld information from the client without notice, or deliberately impeded the client's ability to fulfill discovery obligations, none of that was the case here.

Claims of work-product privilege are not, of course, self-executing. The judge raised the concern that if Jones Day could deem its documents off-limits from discovery, yet also simply sit by while the Hobley litigation dragged along, the work-product claim "would be untestable because the existence of the documents would not be disclosed (which is what almost happened in this case)." 226 F.R.D. at 321. While this is a legitimate concern, it again conflates the duties of a party and a nonparty. Had the documents never come to light, it would have been because the City had improperly failed to disclose

---

4. At the evidentiary hearing, the following exchange took place between the judge and attorney Puiszis:

THE COURT: ... Nobody made any effort to go back to Jones, Day and say, we've got this lawsuit, we've got this document request, we've got some of your documents but maybe there is something else out there, here is a copy of the document request?

THE WITNESS: There was no communication to that effect from anyone from Hinshaw to anyone from Jones, Day, your Honor, that's correct.

their existence. A party's former counsel is required to respond appropriately to subpoenas, orders, and other requests it actually receives. But it is not responsible for insuring against the former client's discovery missteps.

While Jones Day's independent claim to privilege may have negated the City's control over the work-product documents, that did not absolve the City of its duty to respond fully and candidly to discovery requests. *See* 8 Wright, et al., *Federal Practice & Procedure* § 2213 (a responding party should indicate if requested documents are not in its possession, custody, or control). Attorneys for the City were perfectly aware that five boxes of privileged material had been culled from the police board documents Hobley requested, and it seems clear the City had a duty to disclose their existence earlier than it did. Yet, the City appears content to stand by and let Jones Day take the rap for the City's failure to keep both its adversary and its former counsel properly informed about matters that affected their legal rights.

We conclude that the district court erred in subjecting Jones Day to the discovery obligations of a party under Rule 34(b) and by transferring blame for the City's errors to its former counsel. As a matter of law, Jones Day did not accrue an obligation to assert its privilege claim until it received the court order of April 20, 2004. Since the firm responded appropriately, it has not waived its claim.

The order of the court below is VACATED. Should Hobley choose to subpoena the Jones Day documents, the firm's privilege claims may be tested under the normal procedures for attorney work product. Each party shall bear its own costs.