[No. 23136-4-III. Division Three. March 9, 2006.]

CODY SOTER ET AL., *Plaintiffs*, SPOKANE SCHOOL DISTRICT No. 81, *Respondent*, v. COWLES PUBLISHING COMPANY, *Appellant*.

884

886

*Duane M. Swinton* and *Tracy N. LeRoy* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*), for appellant.

*Paul E. Clay* and *John A. Manix* (of *Stevens, Clay & Manix, P.S.*), for respondent.

*Grace T. Yuan, Michele L. Earl-Hubbard, Milton G. Rowland,* and *Daniel B. Heid* on behalf of Washington Coalition for Open Government, Washington Schools Risk Management Pool, Washington Association of School Administrators, Washington Council of School Attorneys, Southwest Washington Risk Management Insurance Cooperative, Washington Governmental Entity Pool, and Washington State Association of Municipal Attorneys, amici curiae.

¶1 SWEENEY, J. — This is a public disclosure act dispute, RCW 42.17.250-.348. A newspaper requested records of an investigation and settlement by Spokane School District No. 81 (District) following the wrongful death of a young student from anaphylactic shock. The District fed the child a peanut-laden snack lunch despite knowledge that he was allergic to peanuts. The documents requested were all generated by the District's attorneys and their investigators. The District consulted the attorneys to give advice and prepare for the anticipated wrongful death claim, which quickly followed the child's death. We conclude that the requested documents were attorney work product and affirm the refusal of the trial judge to order disclosure.

## FACTS

¶2 A child died from an acute allergic reaction to peanuts while on a field trip with his elementary school class. His medical condition was well known to the District's food staff, the boy's teacher, and the organizers of the field trip, including two school nurses and several parent volunteers. Nevertheless, only peanut-laden snack lunches were provided. The child reported that he did not feel well after tasting a peanut-based cookie. The chaperones did not want to curtail the activities for the other children. So they put the sick child in the school bus to wait. His condition became acute and he was finally taken to a hospital by car. He received an epinephrine injection for the first time on the way. The response was too late and the child died.

¶3 Associate District Superintendent Mark Anderson was informed of the unfolding tragedy by telephone. He

recognized the urgent need for legal counsel and immediately called the District's private law firm. Counsel advised that a wrongful death action was a near certainty. The lawyers then took over all aspects of the District's response. They told Mr. Anderson to send them any documents in the District's files about this child, the field trip, and the District's policies and procedures. All of these preexisting documents were released upon request, and none is at issue here. Resp't's Br. at 23 n.9.

¶4 The law firm hired a private investigator to gather facts and interview witnesses. The lawyers prepared all documents and counseled the District to keep the investigation confidential. The law firm quickly negotiated a settlement between the District and the child's parents. The settlement agreement was also released.

¶5 In addition to the records provided, *The Spokesman Review*, a Spokane regional daily newspaper published by Cowles Publishing Company, requested additional records relating to the incident, pursuant to provisions of the public disclosure act. At issue here are the investigator's notes of interviews with witnesses, the investigator's hand-drawn map, counsel's conference notes, and counsel's report to the District's large loss insurer evaluating the District's legal position. Docs. List Nos. 4-75, Clerk's Papers (CP) at 223-37.

¶6 The deceased child's parents and the District moved the superior court for a declaration that the records were exempt from disclosure. *See* RCW 42.17.330. The District asserted the statutory exemptions for attorney work product and attorney-client privilege. Cowles moved to require the District to show cause why the documents should not be produced. The District moved for summary judgment.

¶7 The trial court examined the documents in camera and concluded they were "classic" attorney work product and attorney-client privileged material and exempt from disclosure under RCW 42.17.310(1)(j).

¶8 Cowles appeals.

## DISCUSSION

¶9 Cowles relies on two essential arguments. First, it characterizes its request as being only for the bare facts about the field trip and how peanuts ended up in this student's lunch. And, it argues, such purely factual information is not protected under the work product doctrine. Cowles denies any claim to documents that reflect an attorney's mental impressions or legal theories. It argues that witness interview notes and maps are not attorney work product because they contain essentially facts from which any mental impressions or legal theories of counsel could easily be redacted. Second, Cowles argues that the documents should not be protected because they *should* have been generated by the District, not by lawyers.

¶10 The District responds that the records are exempt from disclosure by the plain language of the public disclosure act. They are (a) "relevant to a controversy to which an agency is a party" and (b) would not be available to an adverse party under the superior court pretrial discovery rules. RCW 42.17.310(1)(j); *Limstrom v. Ladenburg*, 136 Wn.2d 595, 605, 963 P.2d 869 (1998).

STANDARD OF REVIEW AND CANONS OF CONSTRUCTION

■ ¶11 The decision to exempt public documents as attorney work product presents a mixed question of law and fact. *See Limstrom*, 136 Wn.2d at 606. The definition of work product is a question of law that we review de novo. RCW 42.17.340(3); *see Limstrom*, 136 Wn.2d at 606. But whether a particular document falls within the definition of work product under that interpretation is a finding of fact. *Dawson v. Daly*, 120 Wn.2d 782, 792, 845 P.2d 995 (1993). We will uphold the trial court's findings of fact if substantial evidence supports them. *Org. to Pres. Agric. Lands v. Adams County*, 128 Wn.2d 869, 882, 913 P.2d 793 (1996).

■ ■ ¶12 We construe the disclosure provisions of the public disclosure act broadly and the exemptions narrowly. *Dawson*, 120 Wn.2d at 789-90. And we try to harmonize the

statute with the court rules, giving full effect to both. *Id.* at 790.

WORK PRODUCT

 ¶13 The public disclosure act applies when a member of the public asks an "agency" for a "public record." *Id.* at 788. The District is an agency. A public record is "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by" an agency. Former RCW 42.17.020(36) (1995); *Dawson,* 120 Wn.2d at 789. These records are, then, public records.

 ¶14 The public disclosure act requires disclosure, therefore, unless a specific exemption can be found in the public disclosure act or in another statute. RCW 42-.17.260(1); *Limstrom,* 136 Wn.2d at 604; *Dawson,* 120 Wn.2d at 789.

 ¶15 The public disclosure act contains a specific exemption for records that "are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts." RCW 42-.17.310(1)(j). A "controversy" is not restricted to ongoing formal litigation. It can begin before the formal commencement of a lawsuit and continue afterward. *Dawson,* 120 Wn.2d at 790 (citing *Heidebrink v. Moriwaki,* 104 Wn.2d 392, 400, 706 P.2d 212 (1985)). Relevant records are exempt from disclosure under the public disclosure act if they would not be available to an adverse party under the superior court discovery rules. RCW 42.17.310(1)(j); *Limstrom,* 136 Wn.2d at 605.

 ¶16 A trial judge has broad discretion to manage the discovery process so as to ensure full disclosure of relevant information while protecting the litigants against harmful side effects of disclosure. *O'Connor v. Dep't of Soc. & Health Servs.,* 143 Wn.2d 895, 905, 25 P.3d 426 (2001). The rules protect material defined as attorney work prod-

uct. CR 26(b)(4). The parties here dispute the definition of work product on these facts.

¶17 The attorney work product doctrine first appears in *Hickman v. Taylor*.[1] It is intended "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). The *Hickman* doctrine is now codified in the civil rules at Fed. R. Civ. P. 26(b)(3) and Washington's CR 26(b)(4).

> [A] party may obtain discovery of documents . . . discoverable . . . and prepared in anticipation of litigation or for trial by or for another party . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

CR 26(b)(4).

¶18 Work product under the public disclosure act is the same as work product under the civil rules. *Dawson*, 120 Wn.2d at 789-90. It is defined according to the common law. *Limstrom*, 136 Wn.2d at 605. We therefore turn to case law to define work product under the public disclosure act.

¶19 Work product refers to documents prepared by counsel in anticipation of litigation. *Heidebrink*, 104 Wn.2d at 396. There are two categories: (1) factual information and (2) attorneys' mental impressions, research, legal theories, opinions, and conclusions. *Limstrom*, 136 Wn.2d at 605-06. Disclosure of counsel's memoranda of witnesses' oral statements is "particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 399, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). Notes of oral statements gathered during

[1] *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

preparation for litigation are included with mental impressions in the "opinion" work product category. *In re Firestorm 1991*, 129 Wn.2d 130, 159, 916 P.2d 411 (1996) (Madsen, J., concurring).

¶20 The court may allow an adverse party to discover factual information gathered by an attorney upon a showing of substantial need for the information in preparing the party's case and an inability to obtain the substantial equivalent without undue hardship. CR 26(b)(4); *Heidebrink*, 104 Wn.2d at 395. Opinion work product, by contrast, enjoys nearly absolute immunity. Work product protection belongs to the attorney as well as to the client. *United States v. Nobles*, 422 U.S. 225, 238-39, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975). The court may release it only in very rare and extraordinary circumstances. CR 26(b)(4); *Upjohn*, 449 U.S. at 401; *Pappas v. Holloway*, 114 Wn.2d 198, 211, 787 P.2d 30 (1990).

¶21 Work product documents need not be prepared personally by counsel; they can be prepared by or for the party or the party's representative, so long as they are prepared in anticipation of litigation. *Heidebrink*, 104 Wn.2d at 396; *Smith v. Diamond Offshore Drilling*, 168 F.R.D. 582, 584 (S.D. Tex. 1996).

¶22 Here, the court found that these documents were prepared in anticipation of litigation. And, indeed, based on the nature of this incident, counsel's advice to the District, and the fact that a claim was in fact filed within days, that finding is easily supported by substantial evidence in this record. *Adams County*, 128 Wn.2d at 882. The documents were memoranda of witnesses' oral statements to the investigator and notes by lawyers of their own pretrial preparations. Our independent review of the documents confirms the court's characterization of them as "classic" work product. CP at 760.

EXCEPTIONS TO THE WORK PRODUCT RULE

¶23 The courts have recognized some exceptions to the work product doctrine to ensure the just and fair resolu-

tions of disputes. *Heidebrink*, 104 Wn.2d at 400. Cowles asks us to apply one or more of these exceptions.

*Bad Faith*

¶24 Cowles correctly contends that an attorney's mental impressions are not protected from discovery if what the attorney knew and when he knew it is directly at issue in the litigation. *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 397, 743 P.2d 832 (1987), *overruled on other grounds by Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001). Here, Cowles contends the District's lawyers had information that was directly at issue. But this misses the point of the "bad faith" exception. This exception accommodates bad faith litigation.

¶25 A plaintiff must prove what a defendant knew and when it knew it to show bad faith. But counsel's opinion work product must be central to a party's claim or defense to justify an exception to the strict protection of the rule. *Pappas*, 114 Wn.2d at 212. This occurs in insurance bad faith cases where communications about the insured passing between an insurer and its attorney are not privileged. *Barry v. USAA*, 98 Wn. App. 199, 204, 989 P.2d 1172 (1999). In *Escalante*, for example, the insurance company's attorney's mental impressions at a given time were relevant to the disputed issues in the bad faith claim. *Escalante*, 49 Wn. App. at 393. The fact that counsel had certain information was at the core of the bad faith claim.

¶26 But a public disclosure act request is not comparable to bad faith litigation. Bad faith was not an issue in the controversy in which counsel represented the District. The facts justifying exception to the work product rule simply do not exist.

*Ordinary Course of Business*

¶27 Cowles misconstrues the exception for records that are generated by the defendant in the ordinary course of business, that is, before any threat of litigation. Of course, merely turning such records over to counsel does not

make them work product. Cowles argues that records that were not—but *should have been*—generated in the ordinary course of an agency's business are discoverable even if they were created by counsel in anticipation of litigation. The District responds (a) that the District was not required to generate these records by any administrative procedure and (b) it is immaterial in any event. Even if the District should have generated records, the documents at issue here were in fact created by counsel solely for litigation purposes. They were never forwarded to anyone at the District nor were they intended for routine administrative purposes.

¶28 The business records exception prevents parties from exploiting the work product rule by adopting routine practices whereby all documents appear to be prepared "in anticipation of litigation." *Heidebrink*, 104 Wn.2d at 400. The work product doctrine does not shield records that a party would have generated pursuant to "ordinary course of business" administrative procedures even without the prospect of litigation. *Id.* at 399.

¶29 To identify "ordinary course of business" documents, we look to "the specific parties involved and the expectations of those parties." *Id.* at 400. In *Heidebrink*, the court protected a statement an insured motorist made to the insurance company's investigator after an accident. The court reasoned that litigation is always anticipated when insurance companies take such statements in the course of settling claims. *Id.* at 399. " 'The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case.' " *Id.* (quoting *Fireman's Fund Ins. Co. v. McAlpine*, 120 R.I. 744, 753-54, 391 A.2d 84 (1978)).

¶30 In *Overlake Fund v. City of Bellevue*, 60 Wn. App. 787, 791, 810 P.2d 507 (1991), the city's legal counsel obtained a property appraisal to advise the city of its legal risk if it denied a building permit. The permit applicant had vaguely threatened that he would treat a denial as an unconstitutional taking. Whether the appraisal was pre-

pared in anticipation of litigation was a question of fact. The court remanded for an evaluation of the specific expectations of the parties at the time the appraisal was commissioned. *Id.* at 795-97.

¶31 Here, specific litigation was anticipated from the outset. The District's lawyers hired private investigator David Prescott to take witness statements for the sole purpose of preparing for that litigation—the claims by the estate and parents of the deceased child that they expected would follow and that did, in fact, follow. Lawyers do not ordinarily perform their clients' routine business functions or hire others to do so. It is clear from counsel's instructions to Mr. Prescott, moreover, that he was not expected to conduct an "objective" investigation. It was an investigation geared toward defense of the anticipated claims. And this made sense, given the District's immediately obvious legal exposure. Mr. Prescott sent his invoices not to the District but to the lawyers, and the lawyers forwarded them to the District's liability insurance carrier for payment. Liability insurers do not ordinarily pay for the preparation of administrative business reports.

¶32 Cowles is correct that any documents created by the District before the day of the field trip and simply turned over to the lawyers in anticipation of litigation were not work product. *Heidebrink,* 104 Wn.2d at 399. But the District's preexisting records are not at issue here. We are reviewing records prepared by counsel, after the fact, solely for the defense of anticipated litigation.

¶33 Cowles' argument depends on the substitution of "should have" created for "would have" created. We find no authority for the proposition that documents created by counsel in anticipation of specific litigation are not protected because the client *should have* included the information in routine administrative reports but did not do so. In the cases cited by Cowles and amicus, Coalition for Open Government (COG), the agency did in fact prepare the disputed documents. The sole issue was whether the agency

*would have* prepared them with or without impending litigation.

¶34 In *Cowles Publishing Co. v. City of Spokane*, 69 Wn. App. 678, 849 P.2d 1271 (1993), for example, police officers filed initial mandatory reports with their supervisors of all nontraining police dog contacts that could have caused injury. We agreed that these initial reports should have been disclosed. Any subsequent reports or details of any later internal affairs investigation might well be exempt from public disclosure if it were apparent from the initial report that departmental policy or a criminal statute had been violated. *Id.* at 683-84.

¶35 Here, reports prepared by the District's counsel were not routine reports by District personnel. It was apparent from the outset that the question whether the District satisfied its duty of reasonable care to the deceased child or his parents was at issue and then necessarily implicated the District policies for supervising children with these health problems, with their attendant legal implications.

¶36 In *United States v. Adlman*, 68 F.3d 1495 (2d Cir. 1995), also relied on by Cowles, the Internal Revenue Service filed suit based on a corporation's creative accounting practices. An outside accounting firm had written memos to a corporation employee who happened to be a lawyer. The memos had been prepared under a contract for general accounting services, not for legal advice. They were not, then, attorney work product. *Id.* at 1499.

¶37 Here, the lawyers' participation was not merely incidental, and specific litigation was anticipated.

¶38 *Collins v. Mullins*, 170 F.R.D. 132 (W.D. Va. 1996), cited by amicus COG, held that investigation reports mandated by internal policy were not work product. Collins sued under 42 U.S.C. § 1983 after he was roughed up by Mullins, a deputy sheriff, at the sheriff's office. The court made the sheriff turn over the witness reports to

Collins. While litigation may have been anticipated, the witness reports were gathered by the sheriff in the course of an internal investigation that was mandated whenever police misconduct was alleged. They were not, then, work product. *Id.* at 133, 137. Again, *Collins* is distinguishable. The witness statements there were required by routine procedure and were prepared by the client, not by counsel.

¶39 Cowles correctly contends that CR 26(b)(4) permits a party to obtain from the litigation opponent copies of that person's own prior statements. But this has no application here. Cowles is not seeking its own prior statements. COG cites additional cases in which protection was sought for reports prepared by the defendant prior to the controversy. *See* COG's Br. at 10 n.31.

¶40 That is not what we have here. The trial court simply was not persuaded that an agency in the District's dire legal position would simply decide to delegate the preparation of internal, administrative investigation reports for nonlitigation purposes to lawyers instead of its own employees. That finding is well supported by this record.

*Substantial Need*

¶41 A civil litigant may obtain otherwise undiscoverable work product by showing a substantial need for the information and by showing that the equivalent cannot be obtained without hardship. CR 26(b)(4). "Substantial need" in the litigation context means that the information is vital to the preparation of the party's case. *Heidebrink*, 104 Wn.2d at 401.

¶42 Cowles argues that it has a substantial need because a newspaper has a duty to inform the public. And counsel's records are the sole source of this material because the District failed to generate the information in a publicly available form. The District responds that no public disclosure act request can ever satisfy the substantial need requirement of CR 26(b)(4). That is because need

is "substantial" under the civil rules solely when discovery is essential to the preparation of the litigant's case. And the need for public disclosure can never rise to this level.

¶43 Amicus COG also argues that the public disclosure act work product exemption cannot be coextensive with CR 26(b)(4). Otherwise, work product could be obtained solely by parties to litigation who need the material in the preparation of their legal claims and defenses. Public disclosure act requesters could never satisfy this requirement, and all attorney work product, however innocuous, would always be exempt from all public disclosure act disclosure, contrary to the open government purpose of the act.

¶44 These arguments ignore public disclosure act provisions in favor of the court discovery rules.

¶45 The public disclosure act contains no "substantial need" requirement. Any member of the public can demand any public record from any public agency at any time for any reason, unless the *nature of the material* is such that it is protected. In this case, it would be protected even from a civil litigant who makes the required showing of need.

¶46 The material at issue here is the sort of highly protected opinion work product that would not be discoverable by a litigant. CR 26(b)(4); *Firestorm 1991*, 129 Wn.2d at 136. Absent very rare and extraordinary circumstances, discovery would not be allowed even upon a showing of substantial need. CR 26(b)(4); *Upjohn*, 449 U.S. at 401; *Pappas*, 114 Wn.2d at 211.

¶47 Cowles also obscures the difference between documents and information. The public disclosure act provides access to public documents. RCW 42.17.260. It requires agencies to make nonexempt documents available for public inspection. It does not require agencies to provide information found in documents that are exempt from inspection.

¶48 Cowles insists it is seeking only facts. We disagree. It is true that entirely factual information may be

discoverable under CR 26(b)(4) upon an appropriate showing. But CR 26(b)(4) still protects the attorneys' mental impressions, legal theories, conclusions, and opinions that might be discerned from documents supposedly containing only facts. The documents sought here are imbued with the mental impressions, legal theories, and confidential instructions of a team of lawyers and all people working under their direction defending a client.

¶49 For the same reason, we reject COG's argument that the parents of the child would have been able to obtain this material under the substantial need exception if the case had gone to trial. COG cites to *Southern Railway v. Lanham*, 403 F.2d 119, 123 (5th Cir. 1968), in which a railroad's own claims agent gathered witness statements within days of an accident. The tort plaintiffs later demanded copies. The court found substantial need, because the immediacy value of the statements (taken right after the event) would otherwise be lost. Notes prepared by the railroad's attorneys in anticipation of the litigation were not discoverable, however. This is the holding also in *Diamond Offshore Drilling*. In *Diamond*, the plaintiff wanted transcripts of tape recorded witness interviews prepared in anticipation of litigation by the defendant's own investigator three days after a workplace accident. *Diamond*, 168 F.R.D. at 584.

¶50 But the witness statements in *Southern Railway* and *Diamond* were never claimed to be work product. The statements were gathered by the defendant, not by counsel. Moreover, they were raw statements, not notes on the statements as we have here. *S. Ry.*, 403 F.2d at 126; *Diamond*, 168 F.R.D. at 584. The immediacy argument makes sense for tapes or transcripts. It simply falls flat when an investigator's notes are at issue. The notes may be more immediate in time. But a third party's jottings are far removed from witness statements. And, again, just as importantly, the investigator's interviews were undertaken in the interest of a specific client, the District.

*Irreparable Harm*

 ¶51 COG asserts that not only does the public disclosure act have no substantial need requirement, but RCW 42.17.330 requires the agency to show irreparable harm from disclosure in every case, whether or not a counsel confidentiality exemption under RCW 42-.17.310(1)(j) applies.

¶52 The plain language of the statute suggests otherwise. RCW 42.17.330 permits agencies to seek court protection without waiting for the requester to proceed with show cause on a showing of irreparable harm if no RCW 42-.17.310 exemption applies. If an exemption does apply, that is all the showing we need. We may presume the legislature created the exemption because it determined that harm to the agency would outweigh the benefit to the requester.

¶53 In sum, the substantial need exception to the court rule does not apply. The trial court correctly concluded that the documents are protected work product.

ATTORNEY-CLIENT PRIVILEGE

 ¶54 Besides the exemptions specified in RCW 42-.17.310(1)(j), the public disclosure act also recognizes confidentiality protections found in "another statute." RCW 42-.17.260(1). One of these is the attorney-client privilege set out in RCW 5.60.060(2). The attorney-client privilege statute says:

> An attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.

RCW 5.60.060(2)(a); *Hangartner v. City of Seattle*, 151 Wn.2d 439, 452, 90 P.3d 26 (2004).

¶55 Cowles contends the privilege does not apply. It urges us to follow the dissent from the recent Supreme Court decision in *Hangartner*. COG argues that counsel's notes of statements by non-District witnesses who were

represented by outside counsel are not attorney-client communications and thus not protected.

¶56 *Hangartner* holds that the attorney-client privilege exemption "complements" the work product exemption. *Hangartner*, 151 Wn.2d at 452. Washington courts interpret RCW 5.60.060(2) as providing two-way protection of all communications and advice between attorney and client, including communications from the attorney to the client. *Id.* (citing *Kammerer v. W. Gear Corp.*, 96 Wn.2d 416, 421, 635 P.2d 708 (1981)). Moreover, we tend to use the inclusive term "privileged information" to refer to information protected under both the attorney-client privilege and the work product doctrine. *See, e.g., Firestorm 1991*, 129 Wn.2d at 135.

¶57 The attorney-client privilege for " 'communications and advice between attorney and client' " does not extend to documents prepared for purposes other than communicating with an attorney, however. *Hangartner*, 151 Wn.2d at 452 (quoting *Kammerer*, 96 Wn.2d at 421). But documents covered by the privilege are protected regardless of whether they are "relevant to a controversy." *Hangartner*, 151 Wn.2d at 452. The privilege applies to any information generated by a request for legal advice. *See, e.g., Dietz v. Doe*, 131 Wn.2d 835, 846, 935 P.2d 611 (1997). Amici arguing to uphold the privilege[2] provide examples of situations in which school districts must confide sensitive information to legal advisors. Undermining *Hangartner*, they contend, would hamstring public agencies in litigation by denying them confidential trial preparation. Amici point out that the legislature has amended the public disclosure act since *Hangartner* and did not modify this exemption.

¶58 COG cites more nongermane examples in which the privilege did not apply to a person who happened to be a lawyer but was *not* functioning as a lawyer or to a commu-

---

[2] Washington Schools Risk Management Pool, Washington Association of School Administrators, Washington Council of School Attorneys, Southwest Washington Risk Management Insurance Cooperative, and Washington Governmental Entity Pool.

nication that was not intended to be confidential. *See In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (A person who happened to be an attorney did routine tax work. Communications from clients in that context were not privileged in subsequent litigation.); *United States v. Flores*, 628 F.2d 521 (9th Cir. 1980) (A lawyer represented a client in administrative proceedings that were not intended to be confidential. Communications made in that proceeding were not privileged when the client later faced criminal charges.).

¶59 These cases do not share our facts. The District's lawyers here were acting squarely in their capacity as lawyers. And all communications with the District and others were made in the shadow of impending litigation. *Hangartner* is binding precedent for us. *Halleran v. Nu W., Inc.*, 123 Wn. App. 701, 717, 98 P.3d 52 (2004). No authority is cited for the corollary proposition that a lawyer's own notes of statements of witnesses represented by counsel are not protected. Even if the witness statements themselves are not attorney-client privileged, counsel's notes of the interviews are attorney work product. *Limstrom*, 136 Wn.2d at 605-06.

¶60 All the documents here are protected under the work product doctrine. The trial court cited attorney-client privilege to complement the attorney work product doctrine. It was not necessary, but it was not incorrect.

PUBLIC POLICY

¶61 Cowles next argues that, as a matter of public policy, a public agency should not be able to sidestep a duty to disclose material simply by delegating to a private investigator and legal counsel the entire responsibility for assembling and maintaining records on matters of grave public concern. Cowles contends that if this exemption is allowed to stand, it will allow all public agencies to withhold embarrassing information simply by creating no records and turning potentially compromising incidents over to their lawyers.

¶62 The District acknowledges the need for liberal public access to information. But it also urges the need for confidential pretrial communications to maintain a level playing field for government agencies facing civil litigation. Agencies cannot otherwise balance their conflicting duties to the public. Here, the primary obligation of school districts is to educate and protect children. But they are also stewards of the public treasury.

¶63 We interpret the public disclosure act in the course of deciding cases. We may not rewrite it to add or exclude exemptions. *Hangartner*, 151 Wn.2d at 453. Moreover, we have no reason to doubt that the legislature intended the pretrial discovery exemptions to function precisely as they did here. We conclude that entrusting counsel to compile and maintain information to which so many confidentiality interests potentially attached was not against public policy.

¶64 Public policy may sometimes require the public's right to know to yield. In the public interest, government agencies facing litigation need the protection of the civil pretrial discovery rules. Without them, the public is exposed to unlimited liability.

¶65 Here, the District reasonably and correctly perceived that litigation involving potentially enormous liability was inevitable. It was, therefore, in the public interest for the District immediately to seek legal counsel and follow the instructions of counsel. Moreover, the District faced more than its own potential tort liability. It had to protect the immediate personal needs and legal rights of the stricken family, school staff, and other profoundly affected adults, as well as other children.

¶66 Immediately seeking advice of counsel was the right thing to do. Then, as in any other case of impending major liability, it was counsel's duty to control the flow of information by closely supervising the compilation of records and guarding the confidentiality of material generated in preparation for litigation. The policies underlying the open government provisions of the public disclosure act do not

outweigh the counterbalancing provisions that pretrial confidential communications be exempt from public inspection.

WAIVER

¶67 Finally, Cowles contends that the District waived any privilege when it made selected disclosures to the public and to the deceased child's family of facts discovered through the investigation conducted by counsel.

¶68 But the authority it cites for this proposition is not on point. *Brown v. City of Detroit*, 259 F. Supp. 2d 611, 623 (E.D. Mich. 2003), for example, concerns a party who selectively leaked self-serving portions of privileged material, then tried to assert the privilege to suppress mitigating facts from trial testimony. But that is not what happened here. Before and after this incident, the District reported what happened (a child died when he was mistakenly fed food containing peanuts) and what it did (investigated and settled the claim). This was not exempted information selectively leaked from otherwise privileged documents.

¶69 Documents released to a civil litigation adversary may lose their privileged status. But disclosing facts contained in privileged documents (in interrogatories, for instance) does not mean the other party gets the document itself. *Limstrom v. Ladenburg*, 110 Wn. App. 133, 145, 39 P.3d 351 (2002) (quoting 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2024, at 367 (2d ed. 1994)).

¶70 Moreover, the work product privilege belongs to the attorney as well as to the client. *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). A client cannot waive the privilege as to the attorney. *Id.*

¶71 Finally, as a matter of policy, we cannot reconcile Cowles' waiver argument with the purpose of the public disclosure act. The idea is to achieve more open communication by government agencies, not less. If every public statement by an agency on an issue waived all of the act's

exemptions, the public's access to information would be seriously curtailed by the agency's understandable reticence to say anything.

ARGUMENTS DEVELOPED BY AMICI

¶72 The court has been assisted by several amicus briefs in which the following issues were developed.

*Procedure*

¶73 COG argues that the District thwarted both the substance and underlying policy of the public disclosure act by taking the initiative and seeking a declaratory judgment (what COG calls a "rubber stamp" ruling). COG argues that the public disclosure act does not permit agencies to do this because the potential for abuse is too great. Agencies with unlimited public funds should not be able to haul individual people who file a request under the public disclosure act into court. Rather, the agency response is limited to denying the public disclosure act request and waiting to see whether and when the requester decides to go to court.

¶74 The trial court did not address this procedural issue, because it was moot after Cowles filed its own motion for a hearing on the merits. We mention it because it is likely to recur. *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

¶75 The public disclosure act has an injunction provision for agencies. RCW 42.17.330. An agency asserting an exemption may seek a judicial ruling on the merits when *either* agency functions *or* individuals would be irreparably damaged by disclosure. RCW 42.17.330. This spares the agency the uncertainty and cost of delay, including the per diem penalties for wrongful withholding. It does not prejudice the requester. It is immaterial who hauls whom into court, because the requester who prevails in *any* court action over the release of public records is entitled to attorney fees. RCW 42.17.340(4); *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 271, 884 P.2d 592 (1994).

*Burden Shifting*

¶76 COG also argues that the District, by filing its own motion for judicial review, somehow divested itself of its burden to establish that the requested records are exempt. But nothing in the record suggests that the trial court failed to require the District to justify the claimed exemptions. As discussed above, the District satisfied its burden by showing that the material was prepared by counsel in the reasonable anticipation of litigation and that it reflects, directly or indirectly, counsel's legal theories, mental impressions, conclusions, opinions, and the like.

¶77 We do not consider several additional issues raised solely by amici. *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 272 n.1, 943 P.2d 1378 (1997).

¶78 We affirm the trial judge's decision to deny Cowles access to these documents.

KATO, C.J., and BROWN, J., concur.

Review granted at 158 Wn.2d 1029 (2007).