# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DONALD HERRICK,<br><br>Appellant,<br><br>v.<br><br>SPECIAL COMMITMENT CENTER,<br><br>Respondent. | No. 58167-1-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Donald Herrick brought a Public Records Act (PRA), chapter 42.56 RCW, case against the Special Commitment Center (SCC). Herrick appeals the superior court's order on his motion for show cause, arguing that the superior court erred by denying his motion for in camera review. Herrick also argues that the superior court abused its discretion in determining the amount of penalty imposed against the SCC because the superior court misapplied the *Yousoufian* factors[1] and because the superior court failed to consider approximately 40 additional records that were not disclosed due to the SCC's inadequate search. We affirm the superior court's order; however, because the superior court's order fails to make any findings regarding the adequacy of the SCC's search for the other records that were allegedly not disclosed, we remand to the superior court for further proceedings consistent with this opinion.

---

[1] *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010).

No. 58167-1-II

FACTS

On July 22, 2014, Herrick sent the SCC a PRA request seeking " 'All New Arrival Profiles (NAPs), or the equivalent, from 1990 to the present [July 2014], for every resident ever processed under 71.09 regardless of petition status or current residency.' " *Herrick v. Special Commitment Ctr.*, No. 50364-6-II, slip op. at 2 (Wash. Ct. App. Jun. 4, 2019) (quoting record).[2] The SCC sent Herrick the responsive documents on June 10, 2015, and closed the PRA request. *Id.* at 5. Herrick filed a complaint regarding the SCC response to his PRA request for the NAPs, as well as four other PRA requests he had filed. *Id.* at 7. The SCC moved for summary judgment, which the superior court granted. *Id.*

Herrick appealed the superior court's order on summary judgment, arguing, among other things, that the SCC's search for the NAPs was inadequate. *Id.* at 1. This court described the facts Herrick presented at summary judgment regarding the SCC's response to the request for NAPs:

> A NAP is a document drafted by SCC clinicians to give staff an idea of the resident's criminal and institutional histories, and medical or behavioral concerns. According to Dr. Carole DeMarco, an SCC psychologist, a NAP is completed for each new admission to the SCC. Dr. DeMarco explained, "When the NAP is completed, it is placed in a separate folder with all of the other NAPs. After the resident is admitted to SCC, a folder is established in the Records Department for that resident, and the NAP is placed in the resident's folder." [Clerk's Papers] (CP) at 131. At the time of Herrick's requests, the SCC had processed over 430 residents over the course of its existence.
>
> . . . .
>
> [SCC Public Disclosure Officer Cheryl] Medina provided a declaration regarding her search processes for the NAPs. Medina stated:

---

[2] https://www.courts.wa.gov/opinions/pdf/D2%2050364-6-II%20Unpublished%20Opinion.pdf

2

> With respect to request number 201410-PRR-927 (and the original 201407-PRR-677), I produced all of the New Arrival Profiles (NAPs) to Mr. Podriznik [a member of Herrick's legal team] that were responsive to the original PRR-677 request. I know that I produced all of the responsive NAPs because there is a folder on the SCC intranet that contains a copy of all the NAPs, and I produced all of the NAPs that in that folder had been created as of the date of Mr. Herrick's request (July 14, 2014). There was also a list that I checked to verify that I had them all; when I checked the list, I found two NAPs were missing from the folder. I sought out and found those two missing NAPs, eventually obtaining them from Dr. Carole DeMarco.

CP at 226.

> Herrick compiled a chart comparing an SCC resident list against the NAPs provided from PRR-927. The chart illustrated that the SCC did not provide Herrick with NAPs for more than 80 (out of 436) residents. The chart also illustrated that the SCC provided Herrick with over 70 duplicative NAPs.

*Herrick*, No. 50364-6-II, slip op. at 2-3, 5.

This court reversed the superior court's order on summary judgment regarding the search for the NAPs explaining,

> The SCC must search those places where a record is reasonably likely to be found and cannot limit its search to only a single record system if there are other record systems where a record may likely be. Medina searched and produced all the NAPs in the NAPs intranet folder. She examined these NAPs against another list, realized two were missing, and then produced those two missing documents. According to Dr. DeMarco, every resident upon admission receives a NAP, and each admitted resident has a folder in the records department that contains their NAP. The list Medina used to check her search could have been a list for resident folders, but her declaration lacks clarity on the list that was utilized. As a result, taking the evidence in a light most favorable to Herrick, there could have been a record system, the resident folders, that was seemingly not searched for PRR-927 or PRR-817. Dr. DeMarco's declaration shows that NAPs are reasonably likely, if not certainly, in the resident folders.

> Viewing the evidence in a light most favorable to Herrick, the nonmoving party, Herrick's exhibit, alongside Medina's and Dr. DeMarco's declarations, Herrick has

shown that a portion of the NAPs were excluded from the documents provided. Further, he has shown that the SCC seemingly did not search a record system where the NAPs were reasonably likely to be located. The SCC has not shown its search was adequate beyond material doubt. As a result, we reverse the trial court's grant of summary judgment on the NAPs requests.

*Id.* at 15 (citations omitted). This court affirmed the dismissal of Herrick's other claims and remanded for further proceedings.

Following remand, Herrick filed a motion for in camera review of the record. According to Herrick, the issues presented for the superior court were "not related to any claimed exemptions or redactions per se, but rather are related to the adequacy of both the search and the response . . . ." CP at 9. As part of his motion for in camera review, Herrick sought to have the superior court order the SCC to produce designated documents for the superior court to compare. Herrick argued,

The above specified records should be provided in a timely manner in order to be both utilized by the Court in its In Camera Review and/or Show Cause determinations and also plaintiff in order to more smoothly navigate, correlate and offer explanation during the in camera review process and/or hearing etc.

CP at 16. The SCC argued that in camera review was inappropriate and Herrick's motion for in camera review should be denied.

The superior court apparently took no action on Herrick's motion for in camera review. There is no order specifically denying Herrick's motion for in camera review in the record provided to this court; however, there is also no record of a hearing being held on Herrick's in camera review motion or such a review being conducted.

On December 5, 2022, Herrick filed a motion for show cause. Herrick identified the issue for resolution as whether the SCC adequately searched for and produced the requested NAPs. In

his motion, Herrick focused on two related, but separate arguments. First, he specifically identified two NAPs—for residents Ward and Hegewald—that were not produced with the responsive materials. Second, Herrick also alleged that dozens of NAPs were never produced in response to his request. Herrick identified approximately 40 NAPs that were produced in July 2022 after the SCC completed another search of resident records. Herrick argued that the SCC failed to show they conducted a reasonable search because they produced no evidence that anyone had searched for the NAPs in the resident folders.

In support of his motion for show cause, Herrick included numerous attachments including Medina's and Dr. Demarco's declarations that had been produced during the previous summary judgment motion and the July 2022 letter providing the additional NAPs. Herrick also submitted his own declaration which stated that he had been a resident at SCC and personally saw that each resident had a resident file in the staff area of each unit which contained the resident's NAP.

At the same time, Herrick filed a separate motion to determine penalties. In this motion, Herrick argued that the superior court should impose significant daily penalties for both the inadequate search and resulting denial of multiple NAPs in general and the specific failure to produce the Ward and Hegewald NAPs. Herrick argued that there were no mitigating factors present and there were significant aggravating factors. Herrick also argued that he should be awarded costs as the prevailing party.

In its response to Herrick's motions, the SCC argued that "the search for NAPs was adequate enough to justify a minimal daily fine." CP at 130. The SCC also claimed that every responsive NAP had ultimately been produced and the majority of Herrick's complaints regarding the processing of PRA complaints by the SCC have been remedied. The SCC also noted that the

Ward and Hegewald NAPs were included in the production of additional NAPs in July 2022. The SCC also included a declaration from the current legal coordinator and records and public disclosure manager at the SCC, which documented the composition, training, and processes of the SCC's public disclosure unit.

Following a hearing on Herrick's show cause motion and motion to determine penalties, the superior court made its oral ruling. The superior court did not address Herrick's threshold argument that the SCC failed to conduct an adequate search; rather, the superior court immediately went through the *Yousoufian* factors and calculated a penalty amount:

> I reviewed the documents. As we know—and I just want to make sure the record is clear—the Court knows as well—the Public Records Act purpose is to provide the public full access to information concerning the conduct of government.
>
> When there is an error or conduct where the documents are not turned over in responsive matter required by the Public Records Act, there are two steps involved for the Court to take a look at:
>
> The first is, determine the number of days that the party was denied access.
>
> And the second part is, determine the appropriateness of a per day penalty, which today is between zero [and] a hundred dollars a day.
>
> I've looked at this and it appears to me that the evidence here shows that the documents were demanded on July 14th, 2014. The documents of concern here. We'll get to them in a moment. And were turned over actually on July 11, 2022. My math is that's 2,917 days.
>
> The second thing the Court is required to do is to take a look at aggravating and mitigating factors.
>
> The first one is a lack of clarity in the PRA request. In this particular case there were a number of requests. And it's quite easy to see how this kind of got buried, or could get buried—in the mix of it all. That is a consideration.
>
> The second thing is the agency's prompt response, or legitimate follow up inquiry for clarification. On one part there was a prompt response; there's a lot of

documents that were turned over pursuant to the different requests. And there was prompt follow-up when there was some clarification necessary, except for these particular documents you're talking about today.

The agency's faith, honest and timely and strict compliance with all PRA procedure requirements and exceptions. Again, for the vast majority there was good faith, honest and timely and strict compliance. However, the word "strict compliance," that didn't happen. And there were a couple of documents, for sure, that did not get turned over timely. And they did not follow the PRA procedure requirements and exceptions when it came to these particular documents.

Proper training and supervision of the agency's personnel. This agency does a lot of training and it does look like the supervision is quite good. That's not the issue here at all.

The reasonableness of any explanation for the non-compliance by the agency. Turning over these two documents, I don't find any clarification at all why they held them for eight years; there's no evidence here that shows a reasonableness of that non-compliance.

The helpfulness of the agency to the requester. All the other documents, they were quite helpful; they turned over timely; they did what they needed to do. But these two documents, to one side for a moment.

The existence of agency systems to track and retrieve public records. Again, on these particular records, these two records, it was flawed. But, as to the overall system, is be (sic) quite good.

They were able to retrieve hundreds of documents; just these two were the problem it appears.

Verbatim Rep. of Proc. (VRP) at 13-16. At this point in the superior court's oral ruling, Herrick attempted to correct the superior court's understanding that only two documents were at issue:

>[HERRICK]: Your honor?
>[COURT]: No, I—
>[HERRICK]: There's more than the two.
>[COURT]: Hey. Hang on a second.
>[HERRICK]: Sorry.
>[COURT]: All right.

VRP at 16. But the superior court's oral ruling continued without addressing Herrick's interruption:

> Conversely, the aggravating factors that may support increasing the penalty are the delay in response by the agency, especially circumstances making time of the essence.
>
> There was a delay here. Eight years is a considerable delay. Time of the essence; I don't know that time is actually of the essence here. That has to do with what's the purpose of these two documents compared to all the other documents that were turned over.
>
> I don't find these documents themselves to be necessarily essential but, nevertheless, there was a delay in response.
>
> Lack of strict compliance by the agency with all PRA requirements and exceptions. I addressed that a little above. There was a lack of strict compliance.
>
> Lack of proper training and supervision of the agency personnel. That does not appear to be the issue; it's actually a lack of tracking documents in a manner in which they can be turned over timely.
>
> Unreasonableness of any explanation for non-compliance by the agency; I don't really have a very good explanation as to why these documents were not located originally. I understand there was some transition perhaps in how documents were held. But, still, that is not a reasonable explanation.
>
> Needless reckless wanton and bad faith, or intentional non compliance with the PRA by the agency. Negligent perhaps but not reckless want[on] and bad faith or intentional non-compliance.
>
> Agency dishonesty. I don't find there's any agency dishonesty. Misunderstanding the documents they had and held, perhaps. But not someone trying to mislead anyone. I don't find that to be present at all.
>
> The public importance of the issue to which the request is related, or the importance as foreseeable by the agency. Generally public records turned over is important to the public. These specific documents—these specific documents—I don't find that they're terribly important to the public as such. And it's not really foreseeable why these documents would be important to the public, not that they should be like any other record held but, on the other hand, I don't find they're particularly important.

Any actual personal economic loss to the requester. I have not seen any economic loss to the requester resulting from the agency's misconduct. Certainly, there was no foreseeable loss for these missing couple of documents we're talking about.

And, finally, a penalty to deter future misconduct by the agency, considering the size of the agency and the facts of the case. The agency has already taken a number of steps to try to avoid this in the future. Nevertheless, there has to be—it's broader than this particular request; it's the overall conduct of the agency and making sure that the documents are held properly so when someone does request them, they will be turned timely.

There is some problem with the amount of requests that were made initially. And I can understand that that could cause some confusion. I do understand that. On the other hand, taken all these factors together, a penalty is appropriate in this case:

The Court does find, not a large penalty but a penalty of one dollar per day for 2,917 days for a total of $2,917 will be the sanction imposed on the State.

VRP at 16-18.

On February 15, 2023, the superior court entered its written order on Herrick's motions for show cause and to determine penalties. The written order incorporated the superior court's oral ruling. The superior court again did not address the question of whether the SCC conducted an adequate search but found "that the SCC failed to timely provide two responsive NAPs" for a total of 2,917 days. CP at 165. The superior court ordered the SCC pay $1 per day for each day that the NAPs were withheld for a total penalty of $2,917.

On March 3, 2023, Herrick filed a motion for reconsideration. Herrick specifically raised the issue of the adequacy of the SCC's search and argued that it was inadequate because the SCC searched only one location for NAPs despite the fact that there were two known locations where they might be found. Further, the inadequate search resulted in the failure to produce more than

40 NAPs. The superior court denied the motion as untimely and noted that Herrick had failed to make a showing that reconsideration was warranted under CR 59.

Herrick filed a second motion seeking reconsideration of the order denying his first motion for reconsideration, which was denied by the superior court.

Herrick appeals, arguing the superior court erred by denying his motion for in camera review and abusing its discretion in determining the amount of penalty imposed against the SCC.

ANALYSIS

I. IN CAMERA REVIEW

Herrick first argues that the superior court erred by failing to conduct an in camera review of all the documents Herrick identified. We disagree.

Judicial review of agency actions under the PRA is governed by RCW 42.56.550. RCW 42.56.550(1) provides, "Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records." Show cause hearings may be conducted solely on affidavits. RCW 42.56.550(3). A court may also examine any record in camera. RCW 42.56.550(3).

We review the superior court's decision to conduct an in camera review for an abuse of discretion. *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 863, 288 P.3d 384 (2012), *review denied*, 177 Wn.2d 1002 (2013). Generally, superior courts consider whether in camera review is necessary to determine whether an agency has properly applied exemptions. *See Overlake Fund v. City of Bellevue*, 60 Wn. App. 787, 797, 810 P.2d 507, *review denied*, 117 Wn.2d 1022 (1991).

Courts consider the following factors when determining whether to conduct an in camera review: "(1) judicial economy, (2) the conclusory nature of the agency affidavits, (3) bad faith on the part of the agency, (4) disputes concerning the contents of the documents, (5) whether the agency requests an in camera inspection, and (6) the strong public interest in disclosure." *Id.*

Here, there were no exemptions at issue in Herrick's PRA request—the only issue was the adequacy of the agency's search for the NAPs. None of the relevant factors weigh in favor of in camera review because none of the documents that Herrick attached to his motion for an in camera review contain, or potentially require, redactions and all of the documents were reviewable as part of the show cause process. Accordingly, the superior court did not abuse its discretion by failing to hold an in camera review.[3]

II. PENALTY DETERMINATION

Herrick also argues that the superior court abused its discretion in determining the penalty imposed against the SCC. Specifically, Herrick argues that (1) the superior court failed to properly consider the *Yousoufian* factors as it relates to the Ward and Hegewald NAPs and (2) failed to account for the SCC's inadequate search for the NAPs which resulted in the failure to disclose numerous additional NAPs.

---

[3] To the extent that Herrick argues that in camera review was somehow necessary in order to compel production of additional records by the SCC, we decline to consider this argument. Discovery in a PRA case is governed by the civil rules, as in any other civil action. *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 716-17, 261 P.3d 119 (2011). Herrick has provided no citation to authority establishing that an in camera review is an appropriate substitute for the civil discovery process. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

We affirm the superior court's penalty determination regarding the Ward and Hegewald NAPs. However, Herrick's argument relating to the additional NAPs is premised on a determination that the SCC's search was inadequate and that the SCC acted in bad faith. But based on the record before this court, it does not appear that the superior court actually considered, or at least made findings about, the adequacy of the SCC's search. Accordingly, we remand for the superior court to address the allegedly inadequate search for the NAPs and make an additional penalty determination if warranted.

A.  LEGAL PRINCIPLES

We review a superior court's decision on the amount of penalties in a PRA case for an abuse of discretion. *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 458, 229 P.3d 735 (2010). Our Supreme Court has provided the mitigating and aggravating factors that are considered when determining the amount of a per diem penalty for violations of the PRA. *Id.* at 466-68. The mitigating factors are:

> (1) a lack of clarity in the PRA request, (2) the agency's prompt response or legitimate follow-up inquiry for clarification, (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions, (4) proper training and supervision of the agency's personnel, (5) the reasonableness of any explanation for noncompliance by the agency, (6) the helpfulness of the agency to the requestor, and (7) the existence of agency systems to track and retrieve public records.

*Id.* at 467 (footnotes omitted). The aggravating factors are:

> (1) a delayed response by the agency, especially in circumstances making time of the essence, (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions, (3) lack of proper training and supervision of the agency's personnel, (4) unreasonableness of any explanation for noncompliance by the agency, (5) negligence, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency, (6) agency dishonesty, (7) the public importance of the issue to which the request is related, where the importance was

foreseeable to the agency, (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency, and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Id.* at 467-68 (footnotes omitted). No single factor should control because superior courts have "considerable discretion" when determining PRA penalties. *Id.*

B. PENALTY FOR NON-DISCLOSURE OF WARD AND HEGEWALD NAPS

Here, the superior court found that the SCC failed to disclose the Ward and Hegewald NAPs for 2,917 days. In determining the penalty to impose for the failure to disclose the Ward and Hegewald NAPs, the superior court thoroughly addressed each of the mitigating and aggravating factors under *Yousoufian*. Reviewing the record as whole, it is clear that the superior court determined the failure to disclose the records was a potentially neglectful mistake but neither a systemic failure of compliance with the PRA or the result of intentional misconduct or bad faith on the part of the agency.

Despite Herrick's detailed analysis of each *Yousoufian* factor, his primary complaint with the superior court's analysis is that the superior court declined to find bad faith motivation or intentional misconduct on behalf of the SSC and award a higher penalty. However, based on reviewing the record before this court, we cannot say that the superior court abused its discretion in declining to find the SCC acted with bad faith with respect to the Ward and Hegewald NAPs. Further, the superior court recognized the correct legal standard for awarding penalties and thoroughly analyzed each relevant factor. Accordingly, the superior court did not abuse its discretion in imposing a $1 per day penalty for the SCC's failure to disclose to Ward and Hegewald NAPs.

C. FAILURE TO CONSIDER INADEQUATE SEARCH

Separate from the Ward and Hegewald NAPs, Herrick argues that the superior court misapplied the *Yousoufian* factors because it did not consider the circumstances of the SCC's inadequate search for the NAPs—specifically, the willful refusal to search resident files for the NAPs despite knowing resident files contained NAPs—and that the failure to perform an adequate search resulted in numerous additional NAPs not being disclosed.

The failure to perform an adequate search for records is the equivalent of a denial under the PRA. *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 721, 261 P.3d 119 (2011). The adequacy of a search is judged by a standard of reasonableness; specifically, the search "must be reasonably calculated to uncover all relevant documents." *Id*. at 720. The reasonableness of the search depends on the circumstances of each case. *Id.* "When examining the circumstances of a case, then, the issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found." *Id.*

Agencies are required to make more than a perfunctory search and should follow obvious leads as they are uncovered. *Id.* "The search should not be limited to one or more places if there are additional sources for the information requested." *Id.* An agency is not required to search every place a record may be found, but it is required to search places a responsive record is reasonably likely to be found. *Id.*

Here, the only written findings that the superior court made in this case were that the Ward and Hegewald NAPs were not disclosed. There are no findings in the record related to whether the SCC search for the NAPs was reasonable or whether there was any bad faith, dishonesty, or

other aggravating factors related to the inadequate search. Without any findings related to the inadequate search, we cannot make any determination regarding the *Yousoufian* factors (for anything other than the Ward and Hegewald NAPs) or hold that the superior court abused its discretion in determining the amount of penalties.

A superior court abuses its discretion when it fails to exercise its discretion, such as by failing to make a necessary decision. *State v. Stearman*, 187 Wn. App. 257, 265, 348 P.3d 394 (2015); *In re Adoption of A.W.A.*, 198 Wn. App. 918, 922, 397 P.3d 150 (2017). Making findings regarding the adequacy of the SCC's search for the NAPs was clearly a necessary decision in this case. Indeed, in our 2019 decision, this court specifically remanded Herrick's case to the superior court to resolve genuine issues of material fact regarding the adequacy of the SCC's search for the NAPs. And by raising SCC's failure to produce several dozen additional NAPs, (apart from Ward and Hegewald NAPs), in his motion for show cause, Herrick directly raised issues related to the adequacy of the search. Yet, the superior court failed to make a necessary decision by failing to make any findings regarding the adequacy of the SCC's search for the NAPs. Accordingly, we remand to the superior court to address whether the SCC's search for the NAPs was adequate and, based on those findings, to determine whether additional penalties are warranted.[4]

---

[4] Herrick also argues that the superior court erred by denying his two motions for reconsideration. Because we address the merits of Herrick's challenge to the superior court's order on his motion to show cause and because Herrick's motions for reconsideration do not include evidence or arguments that were not before the superior court in the show cause motion, we do not address Herrick's arguments regarding the superior court's orders denying his motions for reconsideration separately.

III.  COSTS

Herrick argues that the superior court erred by failing to award him costs as the prevailing party.  Herrick also seeks costs on appeal.

A.  COSTS AT SUPERIOR COURT

Under the PRA, "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action."  RCW 42.56.550(4).  Whether to award costs is a legal issue we review de novo.  *Sanders v. State*, 169 Wn.2d 827, 866, 240 P.3d 120 (2010).  However, the amount of the award is reviewed for an abuse of discretion.  *Id.* at 867.

A requester does not need to prevail on all his or her claims in order to be awarded costs.  *See id.* at 867-68.  The superior court has the discretion to apportion costs so the award does not relate to exempt documents or may reduce the amount of the award to account for claims on which the requester did not prevail.  *Id*.

Here, the superior court found that Herrick did prevail on his claim regarding the Ward and Hegewald NAPs and, therefore, Herrick was entitled to some award of costs regarding that claim.  But the superior court abused its discretion by failing to make a determination regarding Herrick's request for costs.  *See A.W.A.*, 198 Wn. App. at 922.  Accordingly, the superior court should consider Herrick's request for costs on remand.

B.  COSTS ON APPEAL

Herrick also requests costs on appeal.  Under RAP 14.2, costs are awarded to the party that substantially prevails on appeal.

No. 58167-1-II

Here, there is no substantially prevailing party on appeal. Herrick did not prevail on his challenges to the penalty award regarding the failure to disclose the Ward and Hegewald NAPs. And although we are remanding to the superior court to make a determination regarding the adequacy of the search for the NAPs, it is unclear whether Herrick will ultimately prevail on his claim that the search for NAPs was inadequate. Accordingly, Herrick's request for costs on appeal is denied.

CONCLUSION

We affirm the superior court's order awarding penalties for the Ward and Hegewald NAPs but remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

MAXA, J.

17